**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TERESA GONCALVES and DINA KETCHAM, on behalf of themselves and all others similarly situated<br><br>                Plaintiffs,<br><br>    *vs.*<br><br>KRISTIN SHEELER DESIGNS, LLC, KRISTIN SHEELER, and JAMES "JIM" BRINNEN,<br><br>                Defendants. | No. 2:25-cv-04264-GRB-ST<br><br>**DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES, AND COUNTER-COMPLAINT** |
| KRISTIN SHEELER DESIGNS, LLC,,<br><br>                Counterclaim-Plaintiff,<br><br>vs.<br><br>TERESA GONCALVES and DINA KETCHAM,<br><br>                Counterclaim-Defendants. | |

Defendants, KRISTIN SHEELER DESIGNS, LLC ("KSD"), Kristin Sheeler ("Sheeler"), and James Brinnen ("Brinnen"), by and through their attorneys, Bowles & Johnson, PLLC, as and for their Answer to Plaintiffs' Complaint dated July 31, 2025, state upon information and belief as follows:

**INTRODUCTION**

1.      Defendants state that Paragraph 1 of the Complaint asserts legal conclusions that do not require a response. To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 1 of the Complaint.

2.      Deny.

3.    Deny.

## JURISDICTION AND VENUE

4.    Defendants admit that the Court has subject matter jurisdiction over the FLSA claims that are not time barred pursuant to 28 U.S.C. § 1331.  Except as explicitly admitted, Defendants deny each and every allegation contained in Paragraph 4 of the Complaint, and specifically deny that this Court has subject matter over Goncalves' alleged claim under the FLSA because it is time barred.

5.    Defendants admit that if a plaintiff has a valid the FLSA claim that is not barred by the relevant statute of limitations, the Court has supplemental jurisdiction over such plaintiff's related NYLL and/or common law claims arising under State and/or local laws pursuant to 28 U.S.C. § 1367, but deny that the Court has supplemental jurisdiction over Plaintiff Goncalves' related NYLL and/or common law claims arising under State and/or local laws because the Court has no original jurisdiction over any claims brought by Plaintiff Goncalves because they are time barred.

6.    Admit.

7.    Admit.

8.    Defendants state that the allegations in Paragraph 8 are vague and ambiguous, precluding Defendants from being able to either admit or deny them, and therefore, Defendants deny each and every allegation contained therein.

9.    Defendants state that Paragraph 9 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 9 of the Complaint.

## PARTIES

2

10.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint.

11.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint.

12.     Deny.

13.     Deny.

14.     Admit.

15.     Defendants admit that Defendant Sheeler is an adult individual residing in the State of New York, County of Suffolk.  Defendants state that the remaining allegations contained in Paragraph 15 of the Complaint are vague and ambiguous, precluding Defendants from being able to either admit or deny them, and therefore, Defendants the same.

16.     Defendants admit that Defendant Brinnen is an adult individual residing in the State of New York, County of Suffolk.  Defendants state that the remaining allegations contained in Paragraph 16 of the Complaint are vague and ambiguous, precluding Defendants from being able to either admit or deny them, and therefore, Defendants the same.

17.     Defendants admit that Defendant KSD employed Plaintiff Goncalves from May 2021 to around May 2023 and employed Plaintiff Ketcham from September 2022 to December 31, 2024, to perform work on its behalf within the State of New York. Except as expressly admitted herein, Defendants deny each and every allegation contained in Paragraph 17 of the Complaint.

## STATEMENT OF FACTS

18.     Deny.

19.     Deny.

20.     Deny.

3

21.     Deny.

22.     Deny.

23.     Defendants admit that Plaintiff Goncalves asked Defendant Sheeler to authorize purchase of a step stool for the dressing room.   Except as expressly admitted herein, Defendants deny each and every allegation contained in Paragraph 23 of the Complaint.

24.     Deny.

25.     Defendants state that Paragraph 25 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny each and every allegation contained in Paragraph 25 of the Complaint.

26.     Defendants admit that according to an agreement between Goncalves and Defendant KSD, Goncalves was to be paid at the hourly rate of $23.00.  Except as expressly admitted herein, Defendants deny each and every allegation contained in Paragraph 26 of the Complaint.

27.     Deny.

28.     Defendants admit that Plaintiff Ketcham began working for Defendant KSD in or around September 2022 as a retail sales associate, and later on was designated as the Acting Manager at the Westhampton Beach location.[1]  Except as expressly admitted herein, Defendants deny each and every allegation contained in Paragraph 28 of the Complaint.

29.     Defendants admit that Defendant KSD initially assigned Plaintiff Ketcham to its Montauk and Bridgehampton store, with an agreed upon initial wage of $20.00 per hour.  Except as expressly admitted herein, Defendants deny each and every allegation contained in Paragraph 29 of the Complaint.

---

[1] Defendants deny each and every allegation in footnote 1 of the Complaint.

30. Deny.

31. Deny.

32. Deny.

33. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint.

34. Deny.

35. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint.

36. Deny.

37. Deny.

38. Deny.

39. Deny.

40. Defendants admit that on or around December 6, 2024, when Plaintiff Ketcham was enroute to Montauk for work and passing by Defendant KSD's Bridgehampton store, she stopped briefly at the Bridgehampton store to pick up holiday decorations, for which activity she was paid $20.00 in cash.

41. Defendants admit that on or around December 13, 2024, when Plaintiff Ketcham was enroute to Montauk for work and passing by Defendant KSD's Bridgehampton store, she stopped briefly at the Bridgehampton store to pick up bags, for which activity she was paid $20.00 in cash.

42. Defendants state that the allegations contained in Paragraph 42 of the Complaint are vague and ambiguous, precluding Defendants from being able to either admit or deny them, and therefore, Defendants deny the same.

43. Admit.

44. Deny.

45. Deny.

46. Defendants state that the allegations in Paragraph 46 are also vague and ambiguous, precluding Defendants from being able to either admit or deny them, and therefore, Defendants deny each and every allegation contained therein.

47. Deny.

48. Deny.

49. Deny.

50. Deny.

51. Defendants state that Paragraph 51 of the Complaint does not require a response. To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 51 of the Complaint.

52. Defendants state that Paragraph 52 of the Complaint does not require a response. To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 52 of the Complaint.

<b><u>FLSA COLLECTIVE ACTION ALLEGATIONS</u></b>

53. Defendants state that Paragraph 53 of the Complaint asserts legal conclusions that do not require a response. To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 53 of the Complaint.

54. Defendants state that Paragraph 54 of the Complaint asserts legal conclusions that do not require a response. To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 54 of the Complaint.

55.     Defendants state that Paragraph 55 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 55 of the Complaint.

56.     Defendants state that Paragraph 56 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 56 of the Complaint.

57.     Defendants state that Paragraph 57 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 57 of the Complaint.

58.     Defendants state that Paragraph 58 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 58 of the Complaint.

59.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 59 of the Complaint.

60.     Defendants state that Paragraph 60 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 60 of the Complaint.

## CLASS ACTION ALLEGATIONS

61.     Defendants state that Paragraph 61 of the Complaint does not require a response. To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 61 of the Complaint.

**A.  Class Definition**

7

62.    Defendants state that Paragraph 62 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 62 of the Complaint.

63.    Defendants state that Paragraph 63 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 63 of the Complaint.

64.    Defendants state that Paragraph 64 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 64 of the Complaint.

65.    Defendants state that Paragraph 65 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 65 of the Complaint.

66.    Defendants state that Paragraph 66 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 66 of the Complaint.

67.    Deny.

68.    Defendants state that Paragraph 68 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 68 of the Complaint.

**B. Numerosity and Impracticability of Joinder**

69.    Defendants state that Paragraph 69 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 69 of the Complaint.

70.     Defendants state that Paragraph 70 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 70 of the Complaint.

71.     Defendants state that Paragraph 71 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 71 of the Complaint.

72.     Defendants state that Paragraph 72 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 72 of the Complaint.

**C.  Common Questions of Law and Fact**

73.     Defendants state that Paragraph 71 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 71 of the Complaint.

74. Deny.

75. Deny.

76.     Defendants state that Paragraph 76 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 76 of the Complaint.

**D.  Typicality of Claims and Relief Sought**

77.     Deny.

78.     Admit.

79.     Deny.

80.    Defendants state that Paragraph 80 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 80 of the Complaint.

### E.  Adequacy of Representation

81.    Deny.

82.    Deny.

83.    Deny.

84.    Deny.

85.    Defendants state that Paragraph 85 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 85 of the Complaint.

### F.  Requirements of Rule 23(b)(1)

86.    Defendants state that Paragraph 86 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 86 of the Complaint.

87.    Defendants state that Paragraph 87 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 87 of the Complaint.

88.    Defendants state that Paragraph 88 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 88 of the Complaint.

89.     Defendants state that Paragraph 89 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 89 of the Complaint.

**G.  Requirements of Rule 23(b)(2)**

90.     Deny.

91.     Deny.

92.     Defendants state that Paragraph 92 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 92 of the Complaint.

93.     Defendants state that Paragraph 93 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 93 of the Complaint.

94.     Defendants state that Paragraph 94 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 94 of the Complaint.

**H.  Requirements of Rule 23(b)(3)**

95.     Defendants state that Paragraph 95 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 95 of the Complaint.

96.     Defendants state that Paragraph 96 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 96 of the Complaint.

97.    Defendants state that Paragraph 97 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 97 of the Complaint.

98.    Defendants state that Paragraph 98 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 98 of the Complaint.

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FLSA: UNPAID WAGES AND OVERTIME PAY
**(*on behalf of the Plaintiffs and the Collective Action Members*)**

99.    No response required.

100.    Deny.

101.    Deny.

102.    Deny.

103.    Deny.

104.    Deny.

105.    Deny.

### COUNT TWO
### VIOLATION OF THE NYLL: FAILURE TO PAY OVERTIME
**(*on behalf of the Plaintiffs and the Class*)**

106.    No response required.

107.    No response required.

108.    Defendants state that Paragraph 108 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 108 of the Complaint.

12

109.    Defendants state that Paragraph 109 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 109 of the Complaint.

110.    Defendants state that Paragraph 110 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 110 of the Complaint.

111.    Deny.

112.    Deny.

113.    Deny.

114.    Deny.

## COUNT THREE
### VIOLATION OF THE NYLL: FAILURE TO ALL WAGES & WAGE SUPPLEMENTS
#### (*on behalf of the Plaintiffs and the Class*)

115.    No response required.

116.    Defendants state that Paragraph 116 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 116 of the Complaint.

117.    Defendants state that Paragraph 117 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 117 of the Complaint.

118.    Defendants state that Paragraph 118 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 118 of the Complaint.

119.    Deny.

120.    Deny.

121.    Deny.

122.    Deny.

## COUNT FOUR
### VIOLATIONS OF THE NYLL: NOTICES OF PAY RATE
(*on behalf of the Plaintiffs and the Class*)

123.    No response required.

124.    Defendants state that Paragraph 124 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 124 of the Complaint.

125.    Defendants state that Paragraph 125 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 125 of the Complaint.

126.    Defendants state that Paragraph 126 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 126 of the Complaint.

127.    Deny.

128.    Deny.

129.    Deny.

130.    Deny.

## COUNT FIVE
### VIOLATIONS OF THE NYLL: INACCURATE WAGE STATEMENTS
(*on behalf of the Plaintiffs and the Class*)

131.    No response required.

132.    Defendants state that Paragraph 132 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 132 of the Complaint.

133.    Defendants state that Paragraph 133 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 133 of the Complaint.

134.    Defendants state that Paragraph 134 of the Complaint asserts legal conclusions that do not require a response.  To the extent an answer is deemed necessary, Defendants deny the allegations in Paragraph 134 of the Complaint.

135.    Deny.

136.    Deny.

137.    Deny.

138.    Deny.

## PRAYER FOR RELIEF

139.    Defendants deny the allegations contained in the prayer for relief, and each of its subparagraphs, and aver that Plaintiffs are not entitled to any of the relief requested therein or any other relief.

## DEMAND FOR TRIAL BY JURY

140.    The Complaint, and each cause of action therein, fails to state a claim upon which relief can be granted.

## DEFENSES AND AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses without waiving any denials set forth above and without assuming the burden of proof where such burden lies with Plaintiffs:

15

141.    Defendants deny all allegations not specifically admitted herein.

142.    The Complaint, and each and every allegation therein, fail to state a claim upon which relief can be granted.

143.    This Court lacks subject matter jurisdiction over Plaintiff Goncalves' claims. Plaintiff Goncalves failed to file a written consent to become a party plaintiff as required under 29 U.S.C. § 256 before the relevant FLSA statute of limitations on her claims ran.  Thus, Plaintiff Goncalves has no federal claims upon which this Court might base subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  Without a federal question, the Court also lacks supplemental subject matter jurisdiction pursuant to 29 U.S.C. $$ 1367 over Plaintiff Goncalves' NYLL claims.

144.    This Court lacks subject matter jurisdiction over the claims of any prospective member of the Class or Subclass with a time barred FLSA claim for want of a federal question as to such member of the Class or Subclass.

145.    Plaintiffs' claims are barred by payment and/or accord and satisfaction.

146.    Plaintiffs' claims are barred due to the express terms and requirements of their jobs, and their agreement to such terms and requirements.

147.    Plaintiffs' claims are barred by waiver and/or estoppel.

148.    Plaintiffs are barred from bringing any and all claims against Defendants by the doctrine of unclean hands.

149.    Any amounts due to Plaintiffs are subject to offset or other deductions or adjustments for amount paid to Plaintiffs to which they were not otherwise entitled, including but not limited to wage overpayments.

150.    Plaintiffs' claims are barred, in whole or in part, by release of the asserted claims.

16

151.    Plaintiffs' injuries and/or losses, if any, were the result of Plaintiffs' failure to take reasonable steps to mitigate or avoid damages.

152.    Without assuming the burden of proof, Plaintiffs have been paid all wages and all other compensation due to them by virtue of their employment, if any, with Defendant KSD.

153.    This action is not properly maintainable as a class action because Plaintiffs cannot establish all the elements necessary for class certification in that, among other things: common issues of fact or law do no predominate, to the contrary, individual issues predominate; Plaintiffs' claims are not representative or typical of the claims of the putative class; Plaintiffs are not proper class representatives; Plaintiffs and alleged putative class counsel are not adequate representatives for the putative class; the putative class is not so numerous that joinder of all members is impracticable; there does not exist a well-defined community of interest as to questions of law and fact involved; and the alleged putative Class is sufficiently manageable without implementing the class action mechanism and, therefore, is not the superior method for adjudicating this dispute.

154.    Defendants invoke the defenses, protections and limitations of the FLSA.

155.    At all times, Defendants acted in good faith and had reasonable grounds for believing their actions were in compliance with the FLSA.

156.    Defendants did not know or show reckless disregard for whether their conduct was prohibited by the FLSA.

157.    This action is barred to the extent Plaintiffs seek recovery for time that is not compensable time, i.e. "hours worked" under the FLSA.

158.    Plaintiffs are not entitled to punitive/liquidated damages as Defendants did not act or fail to act in a manner sufficient to give rise to punitive/liquidated damages liability.

17

159.    Plaintiffs' action is barred because he seeks to recover for time that is *de minimus* work time and thus not compensable under the FLSA.

160.    To the extent Plaintiffs seek damages related to their FLSA claims, if any, that are not recoverable under the FLSA, Plaintiff is barred from such recovery.

161.    Without assuming the burden of proof, Defendants complied with all recordkeeping requirements of the FLSA.

## RESERVATION OF DEFENSES

162.    Defendants have not yet completed a thorough investigation and study or completed discovery of all facts and circumstances of the subject matter of the Complaint, and accordingly, Defendants reserve the right to amend, modify, revise or supplement their Answer, and to raise such defenses and/or affirmative defenses as facts supporting those defenses become known through discovery.

## COUNTER-COMPLAINT

Defendant and Counterclaim-Plaintiff Kristin Sheeler Designs, LLC ("KSD" or "Counterclaim-Plaintiff") assert the following counterclaims against Teresa Goncalves ("Goncalves") and Dina Ketcham ("Ketcham," and together with Goncalves, "Counterclaim-Defendants"), and allege as follows:

## JURISDICTION AND VENUE

163.    The Court has subject matter jurisdiction over Counterclaim-Plaintiff's Counterclaims pursuant to 28 U.S.C. § 1367.

164.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims

occurred in this district, i.e., Counterclaim-Defendants performed work for KSD within Suffolk County, New York.

## PARTIES

165.    KSD is a limited liability company organized under the State of New York.

166.    Upon information and belief, Goncalves is an adult individual residing within the State of New York.

167.    Upon information and belief, Ketcham is an adult individual residing within the State of New York.

## STATEMENT OF FACTS

168.    Kristin Sheeler ("Sheeler") caused KSD to be formed on August 4, 2005, to facilitate the development of what would eventually become the NIBI-MTK brand.

169.    The NIBI-MTK brand embraces barefoot boho luxury, and casual beach meets Hamptons style.

170.    The clothing designed by Sheeler under the NIBI-MTK brand is owned by KSD until sold to a consumer either through the NIBI-MTK website, or at one of the NIBI-MTK stores.

171.    NIBI-MTK was additionally operated as a pop-up store, eventually opening a seasonal store at The Atlantic Terrace in May, 2015.

172.    The flagship NIBI-MTK location was opened in 2018 in Montauk, New York (the "Montauk Store").

173.    The second location, in Bridgehampton, New York, opened in 2019 (the "Bridgehampton Store").

19

174.    The third NIBI-MTK store was opened in Westhampton, New York in 2021 (the "Westhampton Store"), and remained open under it experienced a fire in the early morning hours on October 25, 2024.  Although KSD originally considered reopening the Westhampton Store following the fire, as a result of the poor reputation Counterclaim Defendants cultivated in the Westhampton Store, KSD decided to permanently close the Westhampton Store.

175.    Generally, the Bridgehampton Store is open 10:00 am to 6:00 pm year-round.

176.    Prior to the fire, the Westhampton Store was generally open 10:00 am to 6:00 pm, although it occasionally closed early on days in the winter season when the store manager felt business was slow.  The Westhampton Store would also close for periods in January and February when the store manager took winter breaks.

177.    The Montauk Store is open 10:00 am to 6:00 pm, but closes for a few months over winter each year to allow staging for the next year's NIBI-MTK designs.

178.    Employees were responsible for clocking in at the beginning of each shift, and clocking out at the conclusion of each shift.  Each employee individually clocked in and out, and KSD maintained automated systems that recorded each clock in and clock out.

179.    KSD's workers were generally instructed not to work overtime.  If one of KSD's managers requested overtime work from any worker, KSD required such overtime to be approved in advance by Sheeler.

### FACTS RELEVANT TO GONCALVES

180.    KSD hired Goncalves on or around May 30, 2021.

181.    Goncalves was a manager, with special access to KSD's timekeeping systems.

182.    On information and belief, Goncalves used her special access to the timekeeping systems to manipulate and inflate her time records.

20

183.    From the beginning of her employment, Goncalves had difficulty remembering to clock in and/or clock out.  Initially Goncalves sought out another manager to correct her clock errors, but eventually this issue was discovered and Goncalves was directed to contact James Brinnen ("Brinnen") for any corrections.

184.    During Goncalves tenure at KSD, there were numerous complaints about Goncalves' management of the staff schedule, including favoring certain staff members, and over-staffing.

185.    Goncalves also took money from the store cash register to pay for incidentals she procured for the store.

186.    Subsequent reconciliations showed that cash envelopes prepared by Goncalves were frequently off by as much as $100 at time.

187.    Upon information and belief, Goncalves took this money, totaling more than $5,000, for her personal use.

188.    As a manager, Goncalves had access to KSD's confidential information.  She was instructed and required to keep such confidential information confidential.

189.    On multiple occasions, Goncalves shared confidential store sales data with other staff members, even after being asked to cease such activities.

190.    Goncalves behavior with customers in the store also proved to be problematic, leading to many Yelp reviews complaining about her.  As a result of this poor behavior, KSD lost customers.

191.    Individuals who stopped into the store unannounced and would report back to KSD that the staff – Goncalves or Ketcham – were "horrible," "inattentive," and generally

"unfriendly" in such a way that they caused a palpable feeling of not being welcome in the store and a lack of desire to shop.

192.    Goncalves worked for KSD until she quit via email on May 28, 2023.

193.    A week or two after Goncalves stopped working for KSD, she took a management position at a competing store two doors down from the Bridgehampton Store, in violation of the noncompete provision contained within Goncalves' employment agreement with KSD.

194.    KSD issued several demand letters to Goncalves and ultimately filed a lawsuit against Goncalves, who at the time was using the last name Sullivan, on January 23, 2024, in the Supreme Court of the State of New York, County of Suffolk ("State Action"), in an effort to enforce the employment agreement's noncompete provision.

195.    The state court ultimately dismissed the State Action on June 5, 2024, on the sole grounds that the noncompete agreement was unenforceable under New York law.  There was no finding that Goncalves was not in egregious breach of the noncompete agreement.

196.    Upon information and belief, the instant lawsuit is retaliatory in nature, in retaliation for KSD's fair lawsuit against Goncalves for her breach of the noncompete agreement.

197.    Shortly after Goncalves' departure KSD discovered that her abrasive personality resulted in the creation of a reputation in Westhampton of KSD's store being filled with unfriendly or "nasty" employees and not worth visiting.

**FACTS RELEVANT TO KETCHAM**

198.    Goncalves introduced KSD to Ketcham, and KSD hired Ketcham on or around September 11, 2022.

199.    Upon information and belief, at the time she was hired, Ketcham resided in Westhampton, but KSD had no openings at the Westhampton Store.

22

200. Ketcham was offered a part-time position at the Montauk Store, and was not eligible for commissions.

201. When Ketcham worked in the Montauk Store for several days in a row, she was permitted to stay in an apartment located at Sheeler's home at no charge, and her gas expenses for her trips to Montauk were paid for by KSD.

202. In or around November 12, 2022, Ketcham began to occasionally work in the Westhampton Store.

203. By June 1, 2023, Ketcham was exclusively working in the Westhampton Store, at which time she was promoted to manager and given a raise to $23.00 per hour.

204. On or around May 24, 2024, Ketcham received another raise, to $27.00 per hour.

205. Following the October 25, 2024 fire at, and subsequent closing of, the Westhampton Store, KSD paid Ketcham for the day of the incident and later, retroactively paid her for the entire week.

206. KSD then arranged to continue Ketcham's employment by finding her off-season opportunities in the Bridgehampton Store and Montauk Store, and inventory work at the Montauk Store. Ketcham proved to be inept at inventory work, necessitating correction by other staff members.

207. Following Ketcham's botched inventory, KSD discovered many garments were missing, including denim and dresses.

208. Upon information and belief, Ketcham used the inventory process as a cover for taking various garments from the Montauk Store.

209.    During the period following the fire, KSD allowed Ketcham to open the Montauk Store during the holiday period on days that it would not typically be opened, simply to allow her to work and be paid.

210.    KSD offered employees a discount of thirty percent (30%), which discount was to be used by employees for their benefit only.

211.    Upon information and belief, throughout her employment Ketcham used her employee discount to purchase clothing for other parties, such as her daughters, rather than for her own benefit, as required by the policy.

212.    Upon information and belief, the value of the merchandise taken by Ketcham through the botched inventory and the misuse of the employee discount policy exceeds $5,000.

213.    Ketcham worked in the Bridgehampton Store until December 31, 2024, at which time she left for vacation.

214.    Sheeler reached out to Ketcham via text on January 11, 2025, regarding scheduling her to work in Bridgehampton in March, 2025.  Ketcham responded the next day that she was in Ohio.

215.    Sheeler again reached out to Ketcham via text on February 6, 2025, inquiring as to whether Ketcham was available to work in the Bridgehampton Store in March, 2025.  Ketcham did not respond.

216.    Sheeler once again reached out to Ketcham via text on February 20, 2025, regarding March 2025 scheduling at the Bridgehampton Store.  Ketcham responded on March 5, 2025, stating that she was in Florida for the month of February and was on that date upstate at her parents, but that she might be able to work on or after March 22, 2025.

217.    Ultimately, Ketcham did not return to work for KSD.

24

**THE INSTANT ACTION**

218.    Counterclaim-Defendants commenced the instant action by filing their Complaint on July 31, 2025, naming KSD, Sheeler, and Brinnen as defendants (collectively, "Defendants").

219.    Although styled as a collective action under the Fair Labor Standards Act ("FLSA") and a class action under the New York Labor Law ("NYLL"), Counterclaim-Defendants have utterly failed to protect the rights of the alleged collective or alleged class.

220.    No motion for class or collective certification has been made, nearly a year into the lawsuit.

221.    Instead, Counterclaim-Defendants have demanded grotesque amounts of funds for themselves under the guise of settlement offers.

222.    Counterclaim-Defendants have also failed to meaningfully participate in discovery.

223.    The Complaint clearly alleges unsupportable claims, and is nothing more than a sham action.

224.    The Complaint is full of mischaracterizations, misrepresentations, and outright fabrications, all of which will be disproven in due course, but all of which are actively damaging KSD's reputation.

225.    Upon information and belief, the allegations in the Complaint are a continuation of mischaracterizations, misrepresentations, and fabrications spread by Counterclaim Defendants in and around the Montauk, Bridgehampton and Westhampton areas of New York.

226.    Upon information and belief, Counterclaim Defendants have repeated the false allegations contained in the Complaint to ex- and current KSD employees, making it difficult for

KSD to re-hire former employees, resulting in a decrease in revenues due to an inability to fully staff its stores.

## FIRST COUNTERCLAIM

### Conversion

227.    Counterclaim-Plaintiff here repeats and realleges the foregoing allegations as if set forth fully herein.

228.    During the course of her employment, Ketcham removed clothing from KSD's Montauk Store, and abused the employee discount policy by purchasing clothing at a steep discount for individuals other than herself, without KSD's permission.

229.    By removing the clothing from KSD's stores and abusing the employee discount policy, Ketcham has wrongfully exercised dominion over the clothing.

230.    KSD has an ownership right in the clothing designed under the NIBI-MTK brand that is sold through its website, and at its stores, as well as the other clothing, accessories, jewelry and home goods sold in its stores.

231.    Likewise, during the course of her employment, Goncalves removed money from KSD's stores without its permission.

232.    By removing money from KSD's stores, Goncalves has wrongfully exercised dominion over the funds.

233.    KSD has an ownership right in the cash received at the stores when customers purchase items at the stores.

234.    KSD has a right to control the clothing and merchandise in its stores, and the funds it receives from the sale of such clothing; Counterclaim-Defendants' actions have deprived KSD of its rights with respect to the stolen items.

26

235.    Counterclaim-Defendants' actions constitute the tort of conversion.

236.    KSD has been damaged by Goncalves' conversion of its funds in an amount to be shown at trial, but exceeding $5,000.

237.    KSD has been damaged by Ketcham's conversion of its NIBI-MTK brand clothing in an amount to be shown at trial, but exceeding $5,000.

## SECOND COUNTERCLAIM

### Defamation

238.    Counterclaim-Plaintiff here repeats and realleges the foregoing allegations as if set forth fully herein.

239.    On information and belief, Counterclaim-Defendants have published mischaracterizations, misrepresentations, and fabrications to ex- and current KSD employees in and around the Montauk, Bridgehampton and Westhampton areas of New York.

240.    As a result of these misrepresentations, KSD is experiencing difficulty in rehiring former employees, and has seen a decrease in revenue due to its inability to fully staff the KSD stores.

241.    KSD has been damaged by Counterclaim-Defendants defamatory statements in an amount to be shown at trial.

## THIRD COUNTERCLAIM

### Tortious Interference

242.    Counterclaim-Plaintiff here repeats and realleges the foregoing allegations as if set forth fully herein.

243.    KSD has a valid, ongoing business relationship with the customers that enter its stores, as well as the current and former employees, which it frequently rehires on a seasonal basis.

244.    Goncalves and Ketcham were and are aware of KSD's business relationship with its customers and employees.

245.    Goncalves and Ketcham's behavior in the course of their employment with KSD intentionally created a toxic environment that drove away customers and employees alike.

246.    As a result of the toxic environment created by Counterclaim Defendants, the Westhampton Store was not reopened following the 2024 fire, and thus KSD has seen a decrease in business revenue of approximately $840,000.

247.    KSD has therefore been damaged by Counterclaim-Defendants' tortious interference with its business relations in an amount to be shown at trial, but exceeding $840,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Counterclaim-Plaintiff prays for judgment against Counterclaim-Defendants on this Counter-Complaint as follows:

A.    On the First Counterclaim for conversion against Counterclaim-Defendants and in favor of Counterclaim-Plaintiff KSD, damages in an amount to be shown at trial, but in excess of $10,000; and

B.    On the Second Counterclaim for defamation against Counterclaim-Defendants and in favor of Counterclaim-Plaintiff KSD, damages in an amount to be shown at trial; and

C.      On the Third Counterclaim for tortious interference against Counterclaim-Defendants and in favor of Counterclaim-Plaintiff KSD, damages in an amount to be shown at trial, but in excess of $840,000; and

D.      Pre-judgment and post-judgment interest;

E.      Counterclaim-Plaintiff's costs of this action; and

F.      Such other and further relief as this Court deems just and proper.

Dated: Tuesday, July 14, 2026        Respectfully submitted,

By: _____

David K. Bowles
BOWLES & JOHNSON PLLC
14 Wall Street, 20th Floor
New York, New York 10005
T: 212-390-8842
E: David@BoJo.Law
*Counsel for Defendants / Counterclaim-Plaintiff*