# Exhibit C

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

TERESA GONCALVES and DINA      :      25 CV 4264(GRB)(ST)
KETCHAM, on behalf of          :
themselves and others          :
similarly situated             :      United States Courthouse
                               :      Central Islip, New York
                               :
Plaintiffs,                    :
                               :      June 30, 2026
    -against-                  :      2:00 p.m.
                               :
                               :
KRISTIN SHEELER DESIGNS,       :
LLC, KRISTIN SHEELER and       :
JAMES "JIM" BRINNEN,

        Defendants.

- - - - - - - - - - - - - - X

TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
BEFORE THE HONORABLE GARY BROWN
UNITED STATES DISTRICT JUDGE

A P P E A R A N C E S:

For the Plaintiff:   SAGE LEGAL, LLC
                     18211 Jamaica Avenue
                     Jamaica, New York 11423
                     BY: EMANUEL KATAEV, ESQ.

For Defendants:      BOWLES LIBERMAN & NEWMAN
                     54 West 21st Street
                     Suite 1007
                     New York, New York 10010
                     BY: DAVID BOWLES, ESQ.




Court Reporter:      LISA SCHMID, CCR, RMR
                     100 Federal Plaza, Suite 570
                     Central Islip, New York 11722
                     Telephone: (631) 712-6102
                     E-mail: LisaSchmidCCR.RMR@gmail.com

Proceedings recorded by computerized stenography.
Transcript produced by Computer-aided Transcription.

2

COURTROOM DEPUTY:  Calling Case Civil 2025-4264, Goncalves versus Kristin Sheeler Designs, LLC, et al.

Counsel, please state your appearance for the record.  Plaintiff goes first.

MR. KATAEV:  Good afternoon, everyone.  Emanuel Kataev of Sage Legal, LLC and Consumer Attorneys, PLLC, for the plaintiffs.

MR. BOWLES:  Good afternoon, Your Honor.  David Bowles for the defendants.

Those are NIBI-MTK, Kristin Sheeler and James Brinnen, and I have with me Mr. Brinnen and Ms. Sheeler at the counsel table.

THE COURT:  Excellent.

And who is with you, sir?

MR. KATAEV:  Yes, Your Honor.  Thank you.

With me are both named plaintiffs, Teresa Goncalves and Dina Ketcham.

THE COURT:  Good.  I'm very glad the parties are here.  They should be part of the process.  I think it's important.

So, we are here for a Pre-motion Conference.  At a pre-motion conference, I do not stop you from making any motions; however, I do reserve the right based upon the pre-motion letters -- which are quite well done -- as well as the arguments you make today to decide the motion if I

3

think it's appropriate in order to save time, money, energy, aggravation, and so forth, and comply with the dictates of Rule 1.

So with that, I'll go to defense counsel.  Would you like to outline the motion you are hoping to make?

MR. BOWLES:  Of course, Your Honor.  Thank you very much and thank you for having us here this afternoon.

Your Honor, we think that this case should be dismissed in its entirety because it has one federal claim that is under the FLSA, the Fair Labor Standards Act, and we think that that claim in this case is defective, Your Honor, for two reasons.

One, they have failed to plausibly allege unpaid wages and unpaid overtime.

We cited the Court to *Lundy*.  They cited the Court to *Herrera* and *Dejesus*, which was quite proper, Your Honor, but even *Herrera* and *Dejesus* does require some specificity.  In fact, the court -- from the *Herrera* is that the plaintiffs must plead FLSA overtime claims with specificity.  That's directly out of *Herrera* from the Second Circuit, Your Honor.

But we think they just don't do that with these two plaintiffs.  We think the closest they come with Ms. Ketcham is paragraph 28, and they allege that she worked 50 hours, but it really doesn't say that she didn't

4

get paid for her overtime.

Paragraph 27 with -- for Ms. Goncalves comes a little closer because it does say that she paid -- she worked 60 hours per week, that she was not paid for all the hours worked, and I agree that comes closer, but I don't think it meets the specificity requirements of these cases, Your Honor.

It doesn't say was that every week, was it some of the weeks, was it more weeks than not or was it one particular week where she didn't get paid.  We don't think if there's any requirement in the law for specificity --

THE COURT:  Let me ask you a question.  Let's say if she said -- and it's a hypothetical.  It's not the case here -- but what if she said, I always worked 60 hours a week and they never paid me overtime.  Good enough?

MR. BOWLES:  It would be specific, Your Honor.

THE COURT:  So to say that it happened sometimes is not specific enough?

MR. BOWLES:  Well, I don't know if they even say that.  They just this vague thing that she worked 60 hours per week and she was not paid for all the hours worked.  And I do not think that is enough.

And again, Your Honor, the point I'm making is more with Ketcham than Goncalves because Ketcham, they

5

don't even do that much.  They just say she worked 50 hours a week.  Where's the allegation, Your Honor?

They've got to have more specificity than this because the cases does not allow conclusory pleading, and I think this is conclusory pleading at its finest, Your Honor.

I think this is more telling with regard to Ms. Ketcham than it is with Ms. Goncalves because the allegations are different and less specific.

But Ms. Goncalves has a separate issue, which is statute of limitations.  FLSA's default statute of limitations is two years.  The case was filed in -- let's see.  Yeah.  The complaint was filed in July of 2025, more than two years after her employment ended, which was in April of 2023.  So by the default statute of limitations, she's already out, Your Honor.

Now, there is an extension of the statute to three years if there's willfulness plausibly pled.

Now, we cite the Court to a case called *Whiteside*, Your Honor, again, from the Second Circuit. And that case says that a court need not accept true conclusory allegations that defendants violated the FLSA.

And we think that any allegations in here of willfulness are conclusory.  They just sprinkle in the word "willful" now and then and say that's enough.  We

6

argue if this case means anything that that is not enough. They can't just say it is willful. There's no specifics as to how it was willful. There's no allegations.

If the Court wants a hypothetical, for example, that Ms. Goncalves worked 60 hours a week and went to Ms. Sheeler and said, I worked 60 hours a week and Ms. Sheeler said, tough. I'm not paying you for 40. Something like that would be specific. This is just, again, sprinkling in willful and that is not enough, we argue. So that, we argue, should do away with Ms. Goncalves' claims.

So Ms. Ketcham and Ms. Goncalves should fall out for lack of plausible pleading under the *Herrera* standard, and Ms. Goncalves should be barred if by the statute of limitations -- not Ms. Ketcham -- we're not making that argument -- but Ms. Goncalves.

One additional issue on the statute of limitations, Your Honor, is that it's still running even on these two named plaintiffs.

The statute is very clear:  29 USC 256, the claim date starts when they both filed the complaint and have filed the opt-in papers.

A written consent to -- the actual language is, he is named specifically named as a party-plaintiff in the complaint and -- and his written consent to become a

7

party-plaintiff is filed.

Neither of these persons have filed a written consent in this case and our argument is that the statute is clear that even though they appear on the pleadings, they haven't opted in to become a member of the collective here -- and again, the statute of limitations is running.

Now, that only matters, Your Honor, again, right now to Ms. Goncalves, but if Ms. Ketcham does not file one by December, then she would be barred, Your Honor.

That's right.  Yes, Your Honor.

THE COURT:  I'm sorry.  I lost you a little bit there.  Say that again?

MR. BOWLES:  My point, Your Honor, is Ms. Goncalves is barred and this is a separate and independent reason.  She hasn't opted into the case.

Finally, Your Honor, they have alleged individual liability for Ms. Sheeler and Mr. Brinnen.  We think that is not appropriate here.

There is an avenue under the FLSA for them to be defined as employers personally, but they can't, again, just conclusorily allege that they are employers and leave it at that.

They make the classic mistake of group pleading here.  They name Mr. Brinnen, they name Ms. Sheeler, then they say they're all defendants along with NIBI-MTK and

8

then they say defendants did things.

Now, we cite the Court -- and they do, too -- to the case of *Barfield* which has the economic reality case -- test for whether or not somebody is an employer under the FLSA.

So you can't really apply that analysis with group pleading because you can't tell who did what.  You can't tell whether it was Mr. Brinnen or Ms. Sheeler or the company as a whole that controlled their actions or set their time or what have you.

Again, they have group-pleaded and we think that there is no reason for these individuals to be held as party-defendants in this case.  If nothing else, Your Honor, we think they should be dismissed.

And one point final point, Your Honor, which is not on the agenda and not in the letter is that our opponents have failed to participate in the case in a meaningful way so far, Your Honor.

We issued discovery demands according to the Court's scheduling order.  We issued them on March 20th. They were due, responses, April 20th.  We got nothing.  We get no request for an extension.  We got no request to the Court for an extension.

We moved Magistrate Judge Tiscione for a motion to compel.  We haven't heard back from the magistrate yet

9

on that.

But the point is that right now, we're sitting here less than two weeks from the end of discovery.  We don't have any documents from them.  We don't have any formal responses and they're just not participating in this case, Your Honor.

We'd ask for permission to move to dismiss and sanction on that basis as well.

THE COURT:  That's a lot.  Okay.  Good job.

MR. BOWLES:  Thank you, Your Honor.

THE COURT:  All right.  Would you like respond to any of that?

MR. KATAEV:  Yes, Your Honor.  I'll respond to all of it.

THE COURT:  Okay.

MR. KATAEV:  I'll start off by stating that --

THE COURT:  By the way, where's your answers to their discovery demands?

MR. KATAEV:  Your Honor, they weren't properly served, A; and B, we --

THE COURT:  They weren't properly served?  What does that mean?

MR. KATAEV:  It means that Rule 5 requires that they be served in accordance with Rule 5, and they were not served in accordance with Rule 5.

10

And as I was saying, Your Honor --

THE COURT:  Hold on.  It's been a little while for me.  I was a magistrate judge for ten years in this court.

That's a new one on me, counsel.  I think when you serve discovery requests, you send it to your adversary, but -- and by the way, you have an obligation if you know the rules so well, to comply and cooperate in discovery, and if you're not doing that, I will entertain a default judgment -- or rather a dismissal motion as a sanction.  So be very careful with what you say.

MR. KATAEV:  You're correct.

THE COURT:  Hold on.

How -- in what way was the discovery not served consistent with Rule 5?

MR. KATAEV:  Excellent question, Your Honor.  It was served via email only, and I never agreed to accept service via email.

Furthermore, as I was saying when I was interrupted, we have engaged in pre -- sort of pre-Rule 16 discovery, and we provided all the documents in our possession, custody and control.  So the argument that we haven't complied with discovery obligations is kind of meritless in this situation.

THE COURT:  I'm sorry.  Say that part again?

11

MR. KATAEV: Prior to the service of discovery done via email, there was a mediation. Part of the mediation process, there was an exchange of discovery. Plaintiffs provided discovery.

So all the defendants would achieve by having our responses to their improperly-served demands would be the same discovery we already gave them.

THE COURT: Okay. What else would you like to say?

MR. KATAEV: Okay. So, first, let me start off by saying in 1938 when the FLSA was enacted, Congress said that it has to serve broad remedial purposes of public employees like these get properly paid, and so the level of detail with which the defendants seek to attack the complaint does not serve those broad remedial purposes.

For the FLSA, we allege off-the-clock work, that these individuals were hourly employees, were not paid for time they spent working, with one of the plaintiffs after her shift was over, after she was off the clock, she was required to go meet with customers, drop things off, so on and so forth and she was not paid for that time. That states a claim under the FLSA. We don't even need to get into analysis as to the rest.

Same with the other plaintiff. She alleges that she worked hours for which she was not compensated at all.

12

In this case, as I wrote in my letter response in opposition, Ms. Goncalves worked 60 to 70 hours a week without being paid for all the hours she worked.

And Ms. Ketcham pled they she worked 50 hours a week without getting paid anything at all for some of those weeks. In other words, there was a whole week of work where she had some amount of hours, whether it's overtime or not, and she received zero. That's enough to state a claim under the FLSA.

Further, stepping away from that analysis and that sort of pivot, just the sheer fact that we have these allegations that they worked more than 40 hours and that they were uncompensated for that time is enough under *Herrera*.

It is not a overly burdensome standard. That's because the New York Labor Law under Section 195 requires employers to keep time records and pay records.

In this situation, as the Court will hear further on in the case, we didn't receive accurate and contemporaneous time records for every week they worked and we didn't receive accurate pay stubs. So the onus falls on the defendants for that, not on the plaintiffs.

I think *Mt. Clemens* is the case in the Supreme Court that has long held, as this Court is familiar, that plaintiff employees should not be punished for defendant

13

employers' failure to follow the law.

The second argument on statute of limitations -- excuse me, Your Honor, on the statute of limitations doesn't fare well either besides the fact the word "willful" is sprinkled, in the defendants' words, in the complaint about a dozen times.

It specifically alleges in there that the defendants willfully failed to keep accurate payroll records in order to avoid paying plaintiffs and other employees their wages.  Their act in not complying with the law is what makes it willful.

They are required to keep accurate and contemporaneous time records.  They did not.  They were required to keep accurate and contemporaneous pay records. They did not.  That's enough to bring them across the threshold.

THE COURT:  Anything else you would like to say, counsel?

MR. KATAEV:  I have a little bit more.

In terms of the consents, the argument that we make as plaintiffs is that party-plaintiffs don't have to file a consent.  The act of filing the complaint is enough.  If the Court rules otherwise, we have consents, so we can file them, but I don't think that's necessary. I think it's only necessary based on the case law I cite

14

for actual opt-in plaintiffs.

With respect to the individual employer analysis, our allegations in the complaint are clear. Both individual defendants are alleged to have the power and exercise the power to hire, fire, set schedules, set wages, set terms and conditions of employment. There are specific allegations in the complaint as to those things, such as the conditions in which they worked.

So plaintiffs submit that that's sufficient. To the extent that this Court finds that any of these allegations are insufficient, the Court should not dismiss it and instead, in accordance with Second Circuit authority, the Court should give leave to replead, especially as requested here.

I think it also is worth mentioning, Your Honor, that these plaintiffs here, they don't have their W- 2s. Their taxes were not properly reported to the federal and state government, so their Social Security earnings are not accurately reflected, even though they worked.

There is a cause of action for that under the law, which I shared with the defendants, and to the extent the Court finds that the allegations are insufficient, I want to advise the Court that we will be including this new cause of action under the law that provides relief to employees who don't have their Social Security earnings

15

properly reflected in tax filings.

In other words, for every dollar -- every hundred dollars that they earned, they were supposed to deduct $7.65 and pay $7.65 on top of that to the federal government.

They did not do that here.  Those tax filings were not made.  There were deductions taken from their pay and those deductions did not go to the federal government in order for them to benefit in the future when they retire for their Social Security retirement pay.

So for all of those reasons --

THE COURT:  This is a claim you're intending to amend with?  Is that what you're suggesting?

MR. KATAEV:  Yes, Your Honor.

THE COURT:  Counsel said to me two minutes ago that you are two weeks away from the close of discovery. He's right.  Time is of the essence.

MR. KATAEV:  So the law with respect to such amendments is that even if discovery is coming to a close, if the discovery that's taken place so far doesn't -- if you don't need any further discovery, you can amend it. So I've had amendments come in after a decision on summary judgment based on that argument.

And in this case --

THE COURT:  Are you saying you have the right to

16

amend as of right now?

MR. KATAEV:  Well, you have to establish good cause, Your Honor, but --

THE COURT:  Right.  That's what I'm saying to you.

MR. KATAEV:  Under Rule 16.  Yes.

If we move to amend or the Court gives us leave to replead, we will address that standard and handle it accordingly.

My point is that the Court, to the extent it finds that any of the defendants' arguments have merit, which it does not for the reasons outlined in my letter and as argued here, the Court should give the plaintiffs leave to replead.

THE COURT:  Okay.

Anything you'd like to respond to, counsel?

MR. BOWLES:  Yes, Your Honor.  I would thank you very much.

Your Honor, the thing on discovery is absurd. They served their discovery demands by email.  We served ours by email.  The responses that we filed were by email. All the exchange of early discovery, preliminary disclosures, all of that has been by email.

I followed up by email.  I did not get a response that you needed to mail these things to me.

17

And there was no opposition to my letter motion to Judge Tiscione on this issue, which would have been a great place to put the idea that we didn't properly serve the discovery demands.

This is sandbagging, Your Honor. I've never seen it before. And at least the courtesy of an email saying that you have to mail these things to us and kill a few extra trees would have been appreciated, but we didn't get that, Your Honor. I really do think the Court should entertain a motion to dismiss as a sanction on that matter.

Now, the other thing I'd just like to address, Your Honor, this whole idea that they're going to amend on the Social Security issue -- first of all, factually, they know this. That's all been fixed. They did have an issue with that. My client learned about it. They learned about it on their own. They were fixing it before this complaint ever came in. It has been fixed. That's not part of what's before the Court today in any way because that's not part of the pleadings today.

The motion -- the deadline to amend pleadings, court-ordered, was back in March, March 5th of 2026, according to the scheduling order which is at Docket Number 17, and they knew about this beforehand because they told me about it, but for whatever reason, they did

18

not ask to amend the complaint, move to amend the complaint or even try to amend it as of right before that date, and I think it's too late for this sort of thing, Your Honor.

We are less than two weeks from the end of discovery. We're got a problem with this case, and I think it's way too late to be bringing a new claim.

THE COURT: Okay.

Are you seeking a Rule 23 class action?

MR. KATAEV: So, Your Honor, that really depends on how this goes. I just want to address quickly the two points --

THE COURT: Could you answer my question first? You can answer anything you want. I'll hear from you. But just answer my question first.

MR. KATAEV: I'll answer your question.

If the Court decides that discovery is over and we're moving forward to summary judgment or trial, we will not be seeking it. If the Court extends discovery, we will be seeking it.

THE COURT: Why?

MR. KATAEV: We want to basically move forward with the case if it's ready to move forward.

THE COURT: No, no, no. My question is, why a class action rather than using the collective action

19

procedures that you have available to you?

MR. KATAEV:  No particular reason.  Sometimes I do both at the same time, Your Honor.

THE COURT:  I understand, but collective action is much less complex, much easier and much less expensive.  Why is that insufficient in these circumstances?

MR. KATAEV:  I wouldn't say that it's insufficient.  It just requires an affirmative act by the remaining employees to sign on.  I'm not sure that they will, due to fear of retaliation and so on and so forth.

THE COURT:  What's the pool of employees that you're looking at here?

MR. KATAEV:  Based on my knowledge over the last six years under Rule 23 class, I anticipate at least -- at least 25, 30.

THE COURT:  Twenty-five or 30?

MR. KATAEV:  Forty is not a magic number, Your Honor.  There are cases that are --

THE COURT:  I didn't say 40 is a magic number.  When you say class action, I usually think thousands.

MR. KATAEV:  No.  This is a retail shop in Montauk, Your Honor, that they don't have that many employees.  It's a small shop, but with turnover the last six years, we have about 25 to 30, based on our understanding.

20

THE COURT:  Well, I mean, as the litigant who should want to move things -- want things to move quickly, I would think that the collective would be a better path for you, but that's your choice.

MR. KATAEV:  That's something that I'll discuss with the clients, Your Honor.

THE COURT:  Okay.

MR. KATAEV:  Just to address those other two points briefly?

THE COURT:  Oh, sure.  Go ahead.

MR. KATAEV:  This oral motion to dismiss under Rule 37 is not properly before this Court.  To the extent the Court does entertain it, dismissal is the most extreme sanction.  The defendants are trying to ride the escalator to the top without all the little intermediate steps in between.

That are much lesser course of sanctions the Court could consider if it is inclined to award any sanctions, which should not be granted here.  Thank you.

THE COURT:  Thank you.

All right.  I'm going rule on the motion now because this is relatively straightforward matter and I think we should move this forward, and I'll address some of that as well.

So this will be the Court's decision.  In this

21

action, I'm deeming the motions to dismiss made and I'm going to rule on them now.

In this action, the named plaintiffs, Teresa Goncalves and Dina Ketcham bring various employment law claims against the defendant, Kristin Sheeler Designs and two individual defendants.

Plaintiffs allege that defendants failed to pay plaintiffs for overtime and failed to pay them minimum wage in violation of the FLSA. Plaintiff also asserts several related claims under New York State Law.

Presently before the Court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

The standard of review here is straightforward and well known. The gravamen is that motions on a motion to dismiss is the question of whether, assuming the allegations of the complaint to be true solely for the purposes of the motion, the complaint sets forth factual material to render the claims plausible.

And I'll cite *Burris v. Nassau County District Attorney*, 2017 Westlaw 9485714 at Star 3 to 4, which is an Eastern District of New York case from 2017.

The legal analysis: Defendants raise seven arguments in support of their motion to dismiss. As plaintiffs note, four of those arguments discuss

22

anticipated motions to certify class or the collective action.

Because a motion to certify has not yet been filed, those arguments are premature. And I would cite there for authority, *Timberg versus Toombs*, T-O-O-M-B-S, which is at 2022 Westlaw 954739 at page Star 7, and that's an Eastern District case from 2022, which says, quote, plaintiff has not moved for certification of a collective action under the FLSA or certification of a class under the NYLL, thus, defendant's assertions about plaintiffs' collective class allegations are more appropriate for the certification stage, unquote.

And *Barrett versus Forest Labs*, which is at 39 F. Supp. 3d, 407, 453, Southern District of New York from 2014, finding the motion is premature where plaintiffs have not yet moved for conditional collective certification, unquote.

The other arguments made by defendants are colorable. They are substantial. But ultimately, I believe as to the motion to dismiss, plaintiffs still prevail.

Specificity of allegations: First, contrary to the defendants' argument, the plaintiff does state a claim under the -- plaintiffs do state a claim under FLSA.

As defendant notes, the Second Circuit has

23

imposed a specificity requirement on FLSA claims, but defendants overstate the scope of that requirement.

Where the Circuit has found the allegations to be insufficient, that has been their -- the recitation has conclusorily tracked the statute, when it was revealed that it's implausible that the plaintiff worked over 40 hours in any given week.

For example, in *Lundy versus Catholic Health*, the claim, quote, failed because of arithmetic. Tallying the plausible factual allegations, we could not get beyond 40 hours in any given week, and therefore, to a plausible claim for overtime, unquote.

And you can see that also in *Dejesus versus HF Management Services*, 726 F. 3d 85 at 88 to 89, which is the Second Circuit in 2013, where they take some time to explain the *Lundy* case.

Similarly, in *Nakahata*, which is N-A-K-A-H-A-T-A, *versus New York Presbyterian Health Care*, at 723 F. 3d 192 at page 201. That's the Second Circuit from 2013. The Circuit explained that an FLSA overtime claim could not be advanced absent any allegation that plaintiffs were scheduled to work 40 hours in a given week.

The touchstone question then is whether the plaintiff adequately alleged that she worked more than

24

40 hours in a week through, quote, sufficient detail about the length and frequency of their unpaid work to permit a plausible inference that she was not adequately compensated for her overtime. And you can see that at page 201.

Thus, merely reciting the standard of 40-plus hours in, quote, some or all weeks is not sufficient, but the Second Circuit has also taken care not to foreclose relief to plaintiffs who neglected to keep careful records of the hours that they worked. And that's *Herrera versus Comme de Garcons*, 84 F. 4th 110 at 115, which is the Second Circuit from 2023.

Accordingly in *Herrera*, the panel found sufficient a recitation that, quote, plaintiffs' regularly-scheduled work hours consisted of five shifts each week, and that each shift lasted between eight and three-quarter hours and nine hours, amounting between -- to between 43.75 hours and 45 hours of work per regular week because, quote, that allegation itself gets us beyond 40 hours in any given work week and therefore, to a plausible claim of overtime. And you can see that in *Herrera* at 84 F. 4th at 115.

Likewise here, the two named plaintiffs allege that their regularly-scheduled shifts amounted to 60 to 70 hours and 50 hours, respectfully. Those recitations

25

are sufficient to state claim under *Herrera* and its predecessors.  I do agree with defendant.  This is not as crystal clear as one might otherwise like or expert, but it is there.

Furthermore, as in *Herrera*, the, quote, other allegations in the complaint likewise independently support the claim that plaintiffs' regular work week exceeded 40 hours, including allegations that plaintiffs were not paid for interviewing, which is the complaint at paragraph 36; transporting holiday decorations, complaint at paragraph 40; or moving merchandize, complaint 41; or other responsibilities.

Under the circumstances, plaintiffs have pled enough facts to make their FLSA overtime claim plausible if not overwhelming; however, plaintiffs' minimum wage theory under the FLSA must be dismissed without prejudice.

Plaintiff does not adequately allege that she was paid under minimum wage for any given week, and the Circuit has been clear that there's no cause of action under the FLSA for, quote, gap time, unquote, meaning hours under 40 that are uncompensated.  And you can see that in *Nakahata* at 723 F. 3d at 201.

You can also take a look at *Weller versus Icahn*, I-C-A-H-N, which is at 2025 Westlaw 745992 at Star 10, an Eastern District case from just last year which says,

26

quote, so long as an employee is being paid the minimum wage or more, the FLSA does not provide recourse for unpaid hours below the 40-hour threshold even if the employee also works overtime in the same week, unquote. And that case is further quoting *Lundy* again.

Here, Plaintiff Ketcham pled that she worked 50 hours per week and, quote, complained to defendants for not getting paid for several weeks, unquote; however, that allegation does not establish that Ketcham was not actually paid for that time, nor does it clarify whether Ketcham was paid -- later paid for those weeks.

Additionally, unlike the overtime claim where plaintiffs established that their working hours exceeded 40 hours per week and provided specific dates where they performed unpaid overtime work, Ketcham did not identify any specific weeks where she was unpaid and indeed, no reference in paragraph 34 resolves the problem because the date of Ketcham's complaint is not necessarily the same as the alleged unpaid weeks.

As a result, plaintiffs have not pled their allegations with sufficient specificity to permit a plausible inference that their aggregate wage fell below the minimum wage, considering that their wage was well in excess of the federal minimum wage. Accordingly, the FLSA minimum wage claim is dismissed without prejudice.

27

Statute of limitations:  Defendants' statute of limitations argument refers in part to class certification issues not properly before the Court at this time.

As to the named plaintiffs, the Court finds that the plaintiffs have adequately alleged willfulness at this stage, entitling them to a three-year statute of limitations.

The Second Circuit has explained that, quote, a violation is willful for purposes of the FLSA limitations provision only if the employer knowingly violates or shows reckless disregard for the provisions of the Act, unquote.  And that's *Brock v. Superior Care*, 840 F. 2d 1054 at 1026.  And that's the Second Circuit from 1988.

That standard has been deemed satisfied where plaintiffs, quote, made allegations that defendants willfully violated the FLSA by requiring employees to work additional hours and manipulating timekeeping equipment, unquote.  And that's *Lawrence versus NYC Medical Practice*, 2021 Westlaw 2026229.  And that's the Southern District from 2021.

So, too, here, where the plaintiffs have specifically alleged that defendants requested plaintiffs work off the clock while knowing of the FLSA's requirements; therefore, the statute of limitations argument is meritless as to the named plaintiffs and

28

premature as to any punitive members of the class.

Individual defendants:  Finally, the Court finds the plaintiffs have adequately alleged a motion to dismiss -- at the motion to dismiss stage that the individual defendants supervised plaintiffs such that a claim for relief against the individual defendants is plausible under the FLSA.

Defendants assert that the complaint rarely mentions the individual defendants by name, but the complaint regularly mentions the defendants in the collective.

For example, the allegations that --  the allegation that during her interview, Plaintiff Ketcham was informed by defendants that she would receive a commission, but she did not begin receiving it until Plaintiff Ketcham brought it to the defendants' attention, unquote -- that's the complaint, paragraph 30 -- necessarily logically refers to the individual defendants.

To the extent that defense counsel relies on a group pleading theory, the fact that there are only two members of the group makes it much more plausible that they could both share supervisory responsibilities.

Quote, the Second Circuit has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the

29

circumstances.  We have identified different sets of relevant factors based on factual challenges posed by particular cases.  And that's *Irizarry versus Catsimatidis.*

Let me spell that for the reporter.  That's C-A-T-S-I-M-A-T-I-D-I-S.  722 F. 3d 99 at 104.  And that's the Second Circuit from 2013.

While the court analyzed whether individuals have, quote, operational control, unquote, over the plaintiffs such that the supervisor, quote, had the power to hire and fire; two, supervise and control employee work schedules or conditions of employment; and three -- I'm sorry.  Three, determine the rate and method pay; and four, maintain employment records.  And that's from *Tapia*, which is 906 F. 3d 58 at 61, the Second Circuit from 2018.

Here, when the complaint references the defendants, it is right to include the two individual defendants.  The complaint includes ample references to the enumerated employment powers, including hiring, control of work schedule and wage setting.

As a result, the plaintiffs have set forth sufficient allegations to make their claim plausible.

In terms of the consent issue raised by defense counsel, I believe that falls more squarely into determinations concerning class and collective actions,

30

which will be the determined by the magistrate judge in the first instance.

Supplemental jurisdiction:  The basis for dismissing the state law claims as for lack of federal question jurisdiction obviously doesn't stand because since the FLSA overtime is not dismissed, that contention is moot and supplemental jurisdiction is proper.

I do want to mention one thing about the discovery issue that was raised to my attention today.

I do agree with plaintiffs' counsel that he doesn't necessarily have to respond to that here at this moment; however, I will say this:  The excuse that I was given for not answering interrogatories, particularly coming from plaintiffs' counsel who should have an interest in moving the case forward, even if technically correct -- and I do not believe it is technically correct. I would have to spend much more time with Rule 5 to make that determination -- it is nevertheless spurious.  It's the first time I've heard such a thing asserted in this courtroom.

And the bottom line is, consider yourself served with those discovery requests and answer them.

And if you didn't respond to a motion pending before the magistrate judge, well, that's going to be a problem, too.  If the plaintiffs are not interested in

31

proceeding with this litigation, it will disappear.

So, accordingly, I deem the motion to dismiss made.  It's granted as to the FLSA minimum wage theory, which is dismissed without prejudice.  The motion is denied as to the remaining claims.

Anything else we should cover today?

MR. BOWLES:  I think that's it, Your Honor. Thank you very much.

MR. KATAEV:  I would like to explore a settlement conference with the magistrate judge if the defendants are so amenable.

THE COURT:  All right.  We're adjourned.  Thank you.

MR. BOWLES:  Thank you, Your Honor.

(Proceedings concluded.)