# Exhibit A

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF SUFFOLK**

| | |
|---|---|
| KRISTIN SHEELER DESIGNS LLC, dba NIBI-MTK/NIBI,<br><br>Plaintiff,<br><br>v.<br><br>TERESA SULLIVAN and GEORGICA PINE CLOTHIERS, LLC, dba "J.MCLAUGHLIN,"<br><br>Defendant. | Index No. 602096/2024<br><br>**AMENDED COMPLAINT** |

Plaintiff Kristin Sheeler Designs LLC, dba Nibi-Mtk/Nibi ("Nibi" or "Plaintiff"), brings suit against defendants Teresa Sullivan ("Sullivan") and Georgica Pine Clothiers, LLC ("JM"), doing business as "J.McLaughlin" (together "Defendants"), and alleges, upon information and belief, except for the allegations that are made on personal knowledge, as follows:

<u>The Causes of Action</u>

1. This complaint seeks relief for Plaintiff against Sullivan for breach of contract, and against JM for tortious interference with contract.

<u>The Parties</u>

2. Plaintiff is a limited liability company organized under the laws of the State of New York, and maintaining clothing store locations at 88 S Euclid Ave, Montauk, New York 11954, 2450 Main Street, Bridgehampton, New York 11932, and 126 Main Street, Westhampton Beach, New York, 11978 (collectively, the "Stores").

3. Defendant Sullivan is an individual residing in the State of New York.

4. Defendant JM is officially known as Georgica Pine Clothiers, LLC, a New York domestic LLC, and operates a retail store at 2442 Montauk Highway, Bridgehampton, New York, next door to the Bridgehampton location of Nibi.

Background of Plaintiff and its Managers

5. Plaintiff is a concept developed and realized by Kristin Sheeler, who is a leading expert in textile design, concept, trend forecasting, and brand development. Plaintiff has developed a niche design recognizable in the Hamptons area.

6. Ms. Sheeler personally designs and manufactures a majority of Plaintiff's styles and fashions.

7. Plaintiff employes a select few people as "Brand Retail Managers" ("Managers"). These Managers are highly vetted hires who lead a retail location and who are expected to be brand ambassadors to grow the brand in the community and surrounding areas. They are expected to develop personal relationships with important customers.

8. Plaintiff also provides these Managers with Plaintiff's confidential information for use in fulfilling their duties.

9. In or around May of 2021, Plaintiff sought to hire a new Manager for Plaintiff's Westhampton beach location.

10. Westhampton beach customers tend to be demanding customers who seek a personal relationship with their high-end clothiers.

11. On or around May of 2021, Plaintiff extended an offer of employment to Sullivan as Manager of Plaintiff's Westhampton location, contingent upon the parties entering into an employment agreement.

12. As part of Sullivan's employment as a Manager, she was introduced to Plaintiff's Westhampton Beach customers, and – as required by the position – developed close relationships with them.

13. While all of Plaintiff's Managers are able to work at any location, they are specialists in their home locations and are very difficult to replace.

14. Plaintiff provided intensive and specialized training to Sullivan, including the following:

a. Style / Aesthetic – Sullivan's training focused on both client management and on floor-set development highly focused on training her to understand all aspects of the brand – shape/body, style and color, trim and details, etc. Intimate details of the brand and how/why it is designed are important background information that enable more effective selling in each location.

b. Design and Manufacturing details – Managers are exposed to design and manufacturing details to be able to use those details to describe what makes Plaintiff's brand unique.

c. Pricing Strategy – many of the items for sale in each location are designed, developed and manufactured 'in-house' enabling Plaintiff to present a highly competitive retail price while maximize profit margins. Sullivan was exposed to that strategy.

d. Floor-set Mix – Sullivan was the Westhampton Beach manager but was also trained to work the Bridgehampton and Montauk locations and therefore has a view of how the various locations, each with a unique

clientele, uses floor-set approaches tailored to the location by style, brand mix, and price-point to establish an attractive floor-set that uniquely tailored to each location to create a highly competitive and unique retail location.

15. Managers are trained to provide detailed and location specific weekly activity reports that are used to continuously analyze location effectiveness and set location and brand strategy. Trained in all locations, Sullivan has a unique view into how each Brand location operates and contributes to Brand development.

16. The Westhampton Beach customer profile is unique amongst Plaintiff's locations. Sullivan understood the customers and was able to succeed at establishing relationships that facilitated selling and brand development at the Westhampton Beach location.

17. The Hamptons hiring market is highly competitive and Sullivan's proximity to the Westhampton Beach location was a key differentiator for her, making her very difficult to replace.

## The General Agreement

18. On or around May 30, 2021, Plaintiff and Sullivan entered into a General Agreement and Release (the "General Agreement") relating to Plaintiff's employment of Sullivan as a Manager for Plaintiff. The General Agreement is attached hereto as Exhibit A and incorporated herein by reference.

19. Paragraph 7 of the General Agreement requires Sullivan to keep confidential certain information including but not limited to Plaintiff's line plans, retail merchandise production techniques, suppliers (i.e. labels, brands, etc.), general merchandising program, marketing / public relations activity, retail site sales and revenue targets/sales

activity, retail site sales staff compensation, etc., which represents Plaintiff's intellectual property and is confidential in nature. Sullivan is explicitly prohibited from disclosing such information to any person or entity not a party to the General Agreement.

20. Paragraph 8 of the Agreement prohibits Sullivan's seeking or accepting offers of employment, whether freelance / contractual, or permanent or part time with any competitor of Plaintiff within forty (40) miles of its Stores during a period of two (2) years from the date of Sullivan's termination.

Sullivan's Resignation, Employment with JM, and JM's Interference with Contract

21. After approximately two years of employment, Sullivan entered into a highly visible and unprofessional exchange with a customer of the store she managed. This exchange cost Plaintiff a valuable customer. The altercation was a complete surprise to Plaintiff, as Sullivan had previously been excellent with customers.

22. Immediately thereafter the customer posted a number of highly disparaging items to social media, harming Plaintiff's reputation and revenues.

23. Upon information and belief, Sullivan instigated the altercation with the customer in order to force Plaintiff to fire Sullivan, and to harm Plaintiff's reputation in the community in favor of Plaintiff's new employer, JM.

24. Upon information and belief, before Plaintiff resigned from Plaintiff's employ, JM had solicited her to quit (or arrange to be fired), and to work with JM.

25. JM is a direct competitor of Plaintiff, and in fact has a retail location in Bridgehampton directly around the corner from one of Plaintiff's stores.

26. JM sells clothing similar to that sold by Plaintiff, in the same market as Plaintiff.

27. JM has sent representatives into Plaintiff's stores at least annually seeking to lure away employees from Plaintiff.

28. Upon information and belief, Sullivan and JM discussed the existence of the Agreements with JM, and JM was therefore aware of the Agreements.

29. Upon information and belief, JM encouraged Sullivan to breach the Agreements by becoming employed by JM.

30. Upon information and belief, Sullivan disclosed confidential information to JM both prior to and after leaving Plaintiff's employment.

31. Plaintiff did not fire Sullivan, but Sullivan decided nonetheless to leave Plaintiff's employ in May of 2023.

32. On May 29, 2023, Plaintiff and Sullivan entered into a General Agreement and Release / Separation (the "Separation Agreement") in conjunction with Sullivan's resignation from employment with Plaintiff. The Separation Agreement is attached hereto as Exhibit B and incorporated herein by reference. The General Agreement and the Separation Agreement are together referred to herein as the "Agreements."

33. Section 3 of the Separation Agreement contains a provision whereby Sullivan confirmed the provisions in the Agreement related to Intellectual Property and Confidentiality / Non-Disclosure, and Non-Recruit/Compete/Solicitation, along with others, and reaffirmed her commitment to abiding by the stated restrictions.

34. Shortly after Sullivan's employment by Plaintiff terminated, Plaintiff became aware that Sullivan was contemplating employment with JM.

35. On or around June 15, 2023, Plaintiff caused its attorneys to send a letter to Sullivan reminding her of the non-compete and confidentiality provisions contained in

the General Agreement and Separation Agreement and demanding her compliance therewith. Copies of both agreements were also provided to Sullivan at that time.

36. Within two or three weeks of terminating her employment with Plaintiff, Sullivan took a position at JM, at their store in Bridgehampton, around the corner from Plaintiff's Bridgehampton location.

37. On or around December 4, 2023, Plaintiff caused its attorneys to send a second letter to Sullivan, once again reminding Sullivan of her obligations under the General Agreement and Separation, and demanding Sullivan immediately comply with the non-compete provisions and terminate the offending employment with JM, and confirm such compliance to counsel.

38. Sullivan never provided confirmation of the termination of her employment with JM.

39. Sullivan remains employed by JM, at the location two storefronts away from Plaintiff's Bridgehampton Store.

40. The Bridgehampton JM store has, since employing Sullivan, pivoted and modified its design approach to be even more directly competitive with Plaintiff.

41. Upon information and belief, this is a direct result of Sullivan's influence on JM.

42. Plaintiff's revenues have declined as a result of Sullivan's resignation and her employment with JM.

43. Plaintiff has suffered and is suffering immediate and continuing loss of revenue from Sullivan's employment with JM.

**FIRST CLAIM FOR RELIEF**
**(against Sullivan)**
**BREACH OF CONTRACT - NONCOMPETE**

44. Plaintiff repeats and realleges the prior allegations as if set forth in full herein.

45. The General Agreement is a contract between Plaintiff and Sullivan.

46. Plaintiff performed under the General Agreement by employing Sullivan.

47. Sullivan breached the General Agreement by taking employment with Plaintiff's competitor during the two (2) year noncompete period following termination of her employment with Plaintiff, where Plaintiff's competitor is located a mere two storefronts away from one of Plaintiff's Stores.

48. Sullivan's breach resulted in damages to Plaintiff in an amount to be determined at trial.

**SECOND CLAIM FOR RELIEF**
**(against Sullivan)**
**BREACH OF CONTRACT - CONFIDENTIALITY**

49. Plaintiff repeats and realleges the prior allegations as if set forth in full herein.

50. The General Agreement is a contract between Plaintiff and Sullivan.

51. Plaintiff performed under the General Agreement by employing Sullivan.

52. Upon information and belief, Sullivan breached the General Agreement by disclosing Plaintiff's confidential information to Plaintiff's competitor, JM, during the course of Sullivan's employment with Plaintiff's competitor, including the two (2) year noncompete period following termination of her employment with Plaintiff.

53. Sullivan's breach resulted in damages to Plaintiff in an amount to be determined at trial.

**THIRD CLAIM FOR RELIEF**
**(against Sullivan)**
**INJUNCTION - NONCOMPETE**

54. Plaintiff repeats and realleges the prior allegations as if set forth in full herein.

55. The obligations arising out of the General Agreement preclude Sullivan from competing with Plaintiff within forty (40) miles of the Stores during the two years following termination of Sullivan's employment by Plaintiff.

56. Plaintiff has suffered, and will continue to suffer, irreparable injury as a result of Sullivan's employment with a competitor of Plaintiff within forty (40) miles of the Stores during the two years following termination of Sullivan's employment by Plaintiff.

57. Based on the foregoing, Plaintiff is entitled to an injunction, restraining and prohibiting Sullivan from seeking or accepting offers of employment, or continuing employment, whether freelance / contractual, or permanent or part time with any competitor of Plaintiff within forty (40) miles of its Stores during a period of two (2) years from the date of Sullivan's termination.

## FOURTH CLAIM FOR RELIEF
## (against Sullivan)
## PERMANENT INJUNCTION – CONFIDENTIAL INFORMATION

58. Plaintiff repeats and realleges the prior allegations as if set forth in full herein.

59. The obligations arising out of the General Agreement preclude Sullivan from disclosing Plaintiff's confidential information to individuals and entities not parties to the General Agreement.

60. Plaintiff has suffered, and will continue to suffer, irreparable injury as a result of Sullivan's sharing of Plaintiff's confidential information with individuals and entities not parties to the General Agreement.

61. Based on the foregoing, Plaintiff is entitled to an injunction, restraining and prohibiting Sullivan sharing Plaintiff's confidential information with individuals and entities not parties to the General Agreement.

**FIFTH CLAIM FOR RELIEF**
**(against JM)**
**PERMANENT INJUNCTION – CONFIDENTIAL INFORMATION**

62. Plaintiff repeats and realleges the prior allegations as if set forth in full herein.

63. On information and belief, JM was aware of the Agreements between Plaintiff and Sullivan before JM hired Sullivan.

64. On information and belief, JM intentionally induced Sullivan to breach the Agreements by accepting employment in JM's competing enterprise within the restricted zone laid out by the Agreements.

65. Plaintiff was damaged by JM's action, in that Plaintiff has lost sales and revenue due to the loss of Sullivan as a manager, and the fact that Sullivan is using her training and connections as received by Plaintiff in competition against Plaintiff, in violation of the Agreements.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment as follows:

a. On the First Claim for Relief, money damages against Sullivan in an amount to be determined at trial; and

b. On the Second Claim for Relief, money damages against Sullivan in an amount to be determined at trial; and

c. On the Third Claim for Relief, an injunction enjoining, restraining and prohibiting Sullivan from seeking or accepting offers of employment, or continuing employment, whether freelance / contractual, or permanent or part time with any competitor of Plaintiff within forty (40) miles of its Stores during a period of two (2) years from the date of Sullivan's termination; and

d. On the Fourth Claim for Relief, a permanent injunction enjoining, restraining and prohibiting Sullivan from sharing Plaintiff's confidential information with individuals and entities not parties to the General Agreement; and

e. On the Fifth Claim for Relief, damages against JM in an amount to be shown at trial; and an injunction against JM to prohibit it from employing Sullivan during the period of the noncompete in the Agreements; and

f. Pre-judgment and post-judgment interest; and

g. Plaintiff's costs of this action; and

h. Such other and further relief as this Court deems just and proper.

Dated: May 20, 2024

BOWLES & JOHNSON PLLC

David K. Bowles
14 Wall Street, 20th Floor
New York, New York 10005
T: (212) 390-8842
F: (866) 844-8305
E: David@BoJo.Law