# Exhibit A

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | | |
|---|---|---|
| Goncalves, et ano.<br>*Plaintiff*<br>v.<br>Kristin Sheeler Designs, LLC, et al.<br>*Defendant* | ) | Civil Action No. 2:25-cv-4264 (GRB) (ST) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Clover Network, LLC Attn: Investigation Department
415 North Mathilda Avenue, Sunnyvale, CA 94085

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
SEE ADDENDUM ATTACHED

| Place: | Date and Time: |
|---|---|
| Sage Legal LLC, Attn: Emanuel Kataev, Esq.<br>18211 Jamaica Avenue, Jamaica, NY 11423-2327<br>will accept service via email | 10/8/2026 10:00 AM |

❒ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 9/15/2026

*CLERK OF COURT*

OR

/s/ Emanuel Kataev, Esq.

*Signature of Clerk or Deputy Clerk* *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Teresa Goncalves, Dina Ketcham, and all others similarly situated , who issues or requests this subpoena, are:

Emanuel Kataev, Esq., 18211 Jamaica Avenue, Jamaica, NY 11423-2327, (718) 412-2421, emanuel@sagelegal.nyc

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No. 2:25-cv-4264 (GRB) (ST)

## PROOF OF SERVICE

***(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)***

I received this subpoena for *(name of individual and title, if any)* ______________________
on *(date)* ______________ .

❒ I served the subpoena by delivering a copy to the named person as follows: ______________________
______________________________________________ on *(date)* ______________ ; or

❒ I returned the subpoena unexecuted because: ______________________
______________________________________________ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of
$ ______________ .

My fees are $ ____________ for travel and $ ____________ for services, for a total of $ 0 .

I declare under penalty of perjury that this information is true.

Date: ______________

______________________________
*Server's signature*

______________________________
*Printed name and title*

______________________________
*Server's address*

Additional information regarding attempted service, etc.:

Print Save As... Add Attachment Reset

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** ***For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** ***For Other Discovery.*** A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** ***Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** ***Command to Produce Materials or Permit Inspection.***
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
**(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** ***Quashing or Modifying a Subpoena.***
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
**(i)** fails to allow a reasonable time to comply;
**(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
**(iv)** subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
**(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** ***Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** ***Claiming Privilege or Protection.***
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
**(i)** expressly make the claim; and
**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Addendum to Subpoena to: Clover Network, LLC**

## SCHEDULE A — DEFINITIONS

For purposes of this subpoena and these requests:

**1. "Clover"** means Clover Network, LLC, together with its parents, subsidiaries, affiliates, divisions, agents, contractors, service providers, data processors, and other persons or entities acting on its behalf, but only to the extent responsive records are within Clover's possession, custody, or control.

**2. "Subject Merchant"** means **KRISTIN SHEELER DESIGNS, LLC**, including any trade name, DBA, predecessor name, successor name, affiliated location, merchant account, or Clover merchant profile associated with that business, including the location(s) at **P.O. Box 1045, Montauk, NY 11954, 88 South Euclid Avenue, Montauk, NY 11954, 2450 Main Street, Bridgehampton, NY 11932, 2450 Montauk Highway, Bridgehampton, NY 11932, 126 Main Street, Westhampton Beach, NY 11978, 134 West 70th Street, Apartment 7, New York, NY 10023, 21 Ocean View Terrace, Montauk, NY 11954, and/or any other address used by the Subject Merchant**.

**3. "Relevant Period"** means **July 31, 2019 through the present**, inclusive.

**4. "Employee" or "Employees"** means every individual who was identified, entered, registered, assigned, associated, scheduled, clocked in or out, paid, or otherwise maintained as an employee, worker, manager, administrator, owner, or other personnel user of the Subject Merchant during any portion of the Relevant Period, including inactive, terminated, suspended, archived, or deleted employee profiles.

**5. "Time Record"** means any electronic record concerning an Employee's work time or purported work time, including clock-ins, clock-outs, shift start and end times, breaks, meal periods, rest periods, scheduled hours, actual hours, overtime, time-off, leave, corrections, adjustments, overrides, approvals, denials, deletions, restorations, automatic clock-outs, and other timekeeping events.

**6. "Pay Record"** means any electronic record concerning compensation or the calculation, transmission, approval, or payment of compensation, including hourly rates, salary rates, regular hours, overtime hours, other premium hours, tips, gratuities, commissions, bonuses, differentials, gross wages, deductions, net wages, payroll periods, payroll runs, payroll adjustments, wage calculations, and payroll-related data transmitted to or received from any integrated payroll or workforce-management service.

**7. "Adjustment"** means any addition, correction, modification, substitution, override, deletion, voiding, restoration, approval, rejection, or other alteration of data, whether performed manually, automatically, through bulk processing, through an application programming interface ("API"), through an integration, or through any other process.

**8. “Administrator”** means any owner, manager, administrator, supervisor, payroll administrator, system administrator, or other user possessing permissions to create, alter, approve, delete, or otherwise modify Employee, timekeeping, scheduling, or payroll information.

**9. “Audit Data”** means all information maintained by Clover that identifies or tends to identify the creation, access, modification, adjustment, approval, rejection, deletion, restoration, transmission, or synchronization of an electronic record, including:

- the date and time of the event;
- the identity or unique identifier of the person, employee, administrator, user account, application, API client, or automated process responsible for the event;
- the role or permission level of that person or account;
- the field or fields affected;
- the value before the change;
- the value after the change;
- the original value;
- the current value;
- any override value;
- the reason, explanation, note, comment, or code associated with the change;
- the date the change became effective;
- the date the change was entered;
- approval or rejection information;
- device, terminal, application, browser, API, integration, or other source information associated with the event, if maintained;
- IP address, device identifier, location information, or comparable source metadata, if maintained as part of the event or audit record;
- deletion timestamps;
- restoration timestamps; and
- any unique record, transaction, event, shift, employee, merchant, payroll, or audit-log identifier associated with the event.

**10. “Electronic Data” or “ESI”** means electronically stored information in any form, including database records, database tables, structured data, JSON, CSV, XML, spreadsheets, reports, logs, event histories, audit histories, API records, system-generated records, transaction records, synchronization records, archived data, and reasonably accessible backup data.

**11. “Integration”** means any third-party application or service connected to the Subject Merchant’s Clover account that received, transmitted, synchronized, displayed, modified, processed, or stored Employee time or pay information, including Homebase, ADP, or any other timekeeping, scheduling, payroll, accounting, human-resources, or workforce-management service.

## SCHEDULE B — GENERAL PRODUCTION INSTRUCTIONS

**1. Scope**

Produce all responsive records concerning all Employees associated with the Subject Merchant during the Relevant Period.

The requests include records associated with active, inactive, terminated, suspended, archived, disabled, or deleted Employee profiles and records associated with any former name, identifier, merchant account, or location used by the Subject Merchant during the Relevant Period.

**2. Native Structured Data Required**

Where responsive information exists as structured electronic data, produce it in its **native or reasonably usable structured form**, including CSV, JSON, XML, XLSX, database export, or other machine-readable format that preserves individual fields and values.

A PDF, screenshot, image, or printed report shall **not substitute for the underlying structured electronic data** where that underlying structured data is available.

Rendered reports may be produced in addition to, but not instead of, the underlying structured data.

**3. Preserve Original and Modified Values**

For any record that has been corrected, adjusted, overridden, edited, deleted, restored, or otherwise modified, produce, to the extent maintained:

a. the original record or original value;
b. every intermediate version or value;
c. the final or presently displayed value;
d. the date and time of each change;
e. the identity and unique identifier of the person or process making each change;
f. the user's role or permission level;
g. any stated reason, note, comment, or explanation for the change; and
h. all corresponding Audit Data.

A production containing only the final or presently displayed value is not responsive where Clover maintains information reflecting an earlier value or the fact that the record was modified.

**4. Deleted and Voided Data**

Responsive records include records marked deleted, voided, inactive, archived, canceled, superseded, or otherwise excluded from the ordinary user interface, to the extent such data remains reasonably accessible to Clover.

Where a deletion timestamp, deleted flag, inactive flag, status field, or similar field exists, include that field in the production.

**5. Date and Time Information**

Produce all date/time values with sufficient information to determine:

- the date and time represented;
- the applicable time zone;
- any UTC offset;
- whether daylight-saving-time adjustments were applied;
- the unit and format of any numeric or epoch timestamp; and
- whether a timestamp represents the time an event occurred, was entered, was modified, was synchronized, or was processed.

**6. Identifiers**

Preserve and produce all unique identifiers necessary to associate related records, including, as applicable:

- merchant ID;
- employee ID;
- shift ID;
- role ID;
- device or terminal ID;
- payroll employee ID;
- payroll run or pay-period ID;
- application or integration ID;
- event or transaction ID;
- audit-log ID; and
- other primary or foreign database keys necessary to relate responsive data.

**7. Data Dictionary**

Produce a data dictionary, schema, field definitions, API documentation, legend, code list, or other records sufficient to explain the fields contained in the production, including any codes, abbreviations, Boolean values, status fields, timestamps, or enumerated values that are not self-explanatory.

**8. No Requirement to Create Substantive Information**

These requests do not require Clover to create substantive business information that does not already exist.

They do require Clover to export, extract, query, or render existing responsive electronic information into a reasonably usable form when that is an ordinary means of producing information maintained in an electronic database.

**9. Integrated Third-Party Systems**

To the extent Clover transmitted responsive information to, received responsive information from, displayed information obtained from, or maintained synchronization or integration records concerning Homebase, ADP, or another third-party service, produce the responsive information maintained by Clover concerning those transactions and integrations.

If responsive records requested below are maintained exclusively by a third-party provider and are not within Clover's possession, custody, or control, identify:

a. the provider;
b. the service or application used;
c. the categories of responsive information transmitted to or maintained by that provider;
d. the merchant/account identifier used in connection with that provider, if disclosure is permitted; and
e. the date range during which the integration was active.

**10. Personally Sensitive Information**

Unless independently relevant to the requested time and pay information, Clover may redact:

- Social Security numbers;
- complete bank-account numbers;
- complete payment-card numbers;
- passwords;
- authentication secrets; and
- comparable credentials.

Such redactions should not remove employee names, employee IDs, payroll IDs, dates, hours, rates of pay, compensation amounts, timekeeping information, adjustment histories, user identities, or other information necessary to understand the responsive time and pay records.

## SCHEDULE C — DOCUMENTS AND ELECTRONIC DATA TO BE PRODUCED

### REQUEST NO. 1 — SUBJECT MERCHANT ACCOUNT IDENTIFICATION

Produce records sufficient to identify every Clover merchant account, merchant ID, business profile, location, and account name associated with the Subject Merchant during the Relevant Period, including:

a. merchant ID and other unique account identifiers;
b. merchant/business name and DBA;
c. location address;
d. dates each account or location was active; and
e. identification of any account migration, consolidation, replacement, or change of merchant identifier during the Relevant Period.

### REQUEST NO. 2 — COMPLETE EMPLOYEE ROSTER AND EMPLOYEE MASTER DATA

Produce the complete electronic Employee roster for the Subject Merchant for the Relevant Period, including active, inactive, terminated, deleted, disabled, or archived Employees.
For each Employee, produce all available fields concerning:

a. employee ID and custom ID;
b. name and nickname;
c. employment or user status;
d. creation date;
e. activation or claimed-account date;
f. modification date;
g. deletion date or deleted status;
h. role or roles;
i. owner, administrator, manager, or employee status;
j. permissions relevant to creating, editing, approving, or deleting time or payroll information; and
k. other identifiers required to associate that Employee with responsive time, shift, payment, order, payroll, or audit records.

### REQUEST NO. 3 — ALL SHIFT AND TIMECLOCK DATA

Produce all electronic shift and timeclock records for every Employee during the Relevant Period.

The production shall include all available fields for each shift or time event, including, without limitation:

a. Employee identity and Employee ID;
b. shift ID or other unique record identifier;
c. original clock-in time;
d. original clock-out time;

e. displayed clock-in time;
f. displayed clock-out time;
g. overridden clock-in time;
h. overridden clock-out time;
i. identity and Employee/user ID associated with any clock-in override;
j. identity and Employee/user ID associated with any clock-out override;
k. deletion timestamp or deletion status;
l. creation timestamp;
m. modification timestamp;
n. cash tips collected, where maintained as part of the shift record;
o. server-banking or comparable shift-status fields; and
p. every other field contained in the underlying electronic shift record.

Produce both:

1. a merchant-wide structured export of all shifts during the Relevant Period; and
2. the underlying data sufficient to preserve all fields not contained in the standard merchant-wide export.

**REQUEST NO. 4 — COMPLETE HISTORY OF TIME RECORD ADJUSTMENTS**

Produce all records reflecting any Adjustment to any Employee's Time Record during the Relevant Period, **regardless of whether the Adjustment was made by an Employee, manager, owner, Administrator, Clover personnel, integrated application, API, or automated process**.

For each Adjustment, produce all available information showing:

a. Employee affected;
b. shift or time-entry ID affected;
c. date of work affected;
d. field changed;
e. value before the change;
f. value after the change;
g. original value;
h. override value;
i. date and time the Adjustment was entered;
j. effective date of the Adjustment;
k. person or process making the Adjustment;
l. user/Employee ID of the person making the Adjustment;
m. user role and permissions;
n. reason, explanation, note, or comment associated with the Adjustment;
o. approval or rejection of the Adjustment;
p. person approving or rejecting it; and
q. all associated Audit Data.

This Request expressly includes **retroactive changes made after the Employee originally clocked in or out and changes made after a timecard, timesheet, pay period, or payroll had been submitted, approved, closed, or processed.**

**REQUEST NO. 5 — EMPLOYEE-INITIATED CORRECTIONS**

Produce all records concerning corrections, edits, requests for correction, additions, or other changes to Time Records initiated or submitted by Employees.

Include:

a. original Employee submission;
b. requested change;
c. Employee explanation or comment;
d. date and time submitted;
e. administrator or manager response;
f. approval, partial approval, modification, or denial;
g. identity of the person acting on the request; and
h. resulting Time Record and Audit Data.

**REQUEST NO. 6 — ADMINISTRATOR-INITIATED CORRECTIONS**

Produce all records concerning Adjustments to Employee Time Records initiated, entered, or performed by an owner, manager, Administrator, payroll administrator, supervisor, or other user other than the affected Employee.

Include all available Audit Data identifying the individual or account responsible for the Adjustment.

**REQUEST NO. 7 — DELETED, VOIDED, OR RESTORED TIME RECORDS**

Produce all Time Records that were:

a. deleted;
b. voided;
c. canceled;
d. archived;
e. replaced;
f. restored;
g. undeleted; or
h. otherwise removed from ordinary display,

together with all available original values, deletion timestamps, restoration timestamps, user identities, reasons, and Audit Data.

**REQUEST NO. 8 — BREAK AND MEAL-PERIOD DATA**

Produce all electronic records concerning Employee breaks and meal periods during the Relevant Period, including:

a. break start and end times;
b. break duration;
c. paid or unpaid status;
d. missed-break indicators;
e. shortened-break indicators;
f. automatically inserted, deducted, or modified breaks;
g. Employee attestations or acknowledgments;
h. Employee requests to correct break information;
i. Administrator modifications to break information; and
j. Audit Data reflecting any alteration of break or meal-period information.

**REQUEST NO. 9 — AUTOMATIC TIMEKEEPING EVENTS AND RULES**
Produce records reflecting automatic or system-generated actions affecting Time Records, including:

a. automatic clock-outs;
b. automatic clock-ins, if any;
c. rounding;
d. grace periods;
e. prevention of early clock-in;
f. automatic meal or break deductions;
g. overtime alerts or controls;
h. restrictions on clock-in or clock-out;
i. automated corrections; and
j. any other configuration or rule that automatically changed, limited, created, or calculated compensable time.

Produce the configuration or settings applicable to each such function during the Relevant Period and records showing material changes to those settings.

**REQUEST NO. 10 — SOURCE AND DEVICE DATA FOR TIME EVENTS**

For each clock-in, clock-out, break, or other Time Record event, produce available information identifying the source through which the event was entered, including:

a. Clover terminal or device;
b. mobile application;
c. web dashboard;
d. Employee application;
e. Administrator dashboard;
f. API;

g. import;
h. third-party integration; or
i. automated process.

Where maintained in the ordinary course as part of the time-event or audit record, include relevant device ID, terminal ID, application ID, user ID, IP address, or other source identifier.

**REQUEST NO. 11 — SCHEDULES AND SCHEDULE CHANGES**

Produce Employee work schedules maintained through or accessible from Clover for the Relevant Period, together with records reflecting:

a. scheduled start and end times;
b. published schedules;
c. draft or prior schedules, if retained;
d. shift changes;
e. shift swaps or covers;
f. manager changes;
g. Employee changes or requests;
h. time-off affecting scheduled hours; and
i. Audit Data identifying who made material changes and when.

**REQUEST NO. 12 — TIMESHEETS AND HOURS APPROVED FOR PAYROLL**

Produce all timesheets and other records showing Employee hours aggregated, reviewed, approved, finalized, or otherwise designated for payroll during the Relevant Period.

For each pay period, include:

a. Employee;
b. regular hours;
c. overtime hours;
d. double-time or other premium hours, if maintained;
e. paid or unpaid break amounts;
f. total compensable hours;
g. timecard or timesheet status;
h. date/time approved or finalized;
i. person approving or finalizing the information; and
j. all post-approval Adjustments.

**REQUEST NO. 13 — PAY RATES AND COMPENSATION DATA**

Produce all responsive electronic data maintained, received, transmitted, or displayed by Clover concerning each Employee's compensation during the Relevant Period, including, to the extent maintained:

a. hourly rate or rates;
b. salary rate;
c. regular rate;
d. overtime rate;
e. premium or differential rates;
f. effective dates for each compensation rate;
g. changes in compensation rates;
h. tips and gratuities associated with the Employee;
i. commissions or bonuses; and
j. compensation-related adjustments.

For each change in an Employee’s rate or compensation settings, produce the prior value, new value, effective date, date entered, identity of the person or process making the change, and associated Audit Data, to the extent maintained.

**REQUEST NO. 14 — PAYROLL RECORDS**

Produce all payroll records maintained, stored, displayed, transmitted, received, or otherwise accessible to Clover concerning Employees during the Relevant Period, including, to the extent available:

a. pay periods;
b. pay dates;
c. hours submitted for payroll;
d. regular wages;
e. overtime wages;
f. other premium wages;
g. tips or gratuities included in payroll;
h. commissions and bonuses;
i. gross compensation;
j. payroll adjustments;
k. deductions, excluding sensitive account credentials;
l. net-pay amounts;
m. payroll status;
n. payroll batch or run identifiers;
o. payroll approval dates;
p. person approving payroll; and
q. corrected, supplemental, voided, reversed, or reissued payroll transactions.

**REQUEST NO. 15 — PAYROLL ADJUSTMENTS AND CORRECTIONS**

Produce all electronic records reflecting an Adjustment affecting Employee compensation or payroll, including:

a. retroactive wage changes;
b. retroactive hour changes;
c. added or removed hours;

d. changed regular hours;
e. changed overtime hours;
f. added or removed tips;
g. changed pay rates;
h. supplemental payroll;
i. corrected payroll;
j. voided payroll;
k. reversals; and
l. manual payroll entries.

For each Adjustment, produce all available information reflecting the value before and after the Adjustment, the person or process making the Adjustment, the date/time of the Adjustment, the stated reason, approval information, and Audit Data.

**REQUEST NO. 16 — TIME-TO-PAYROLL SYNCHRONIZATION DATA**
Produce records sufficient to show each transmission or synchronization of Employee time information from Clover or a Clover-integrated timekeeping service to a payroll system during the Relevant Period.

Include, to the extent maintained:

a. Employee identifier;
b. pay period;
c. hours transmitted;
d. categories of hours transmitted;
e. transmission timestamp;
f. source system;
g. destination system;
h. integration or application identifier;
i. status of the transmission;
j. successful-sync confirmation;
k. errors;
l. failed transmissions;
m. rejected records;
n. retries;
o. manual overrides; and
p. later re-synchronizations caused by corrected time.

Where reasonably available, produce the actual structured data payload transmitted or received.

**REQUEST NO. 17 — HOMEBASE INTEGRATION DATA**

If the Subject Merchant used Homebase, including Time Clock by Homebase or Homebase functionality embedded in or accessed through Clover, produce all responsive records maintained by Clover concerning:

a. activation and termination dates of the integration;
b. account or merchant identifiers linking the systems;
c. Employee mappings between Clover and Homebase;
d. Time Records transmitted to or received from Homebase;
e. timesheet data transmitted or received;
f. scheduling data transmitted or received;
g. adjustments or corrections transmitted or received;
h. synchronization logs;
i. error logs;
j. failed or rejected synchronization events; and
k. the date, time, and content of subsequent synchronization following a corrected Time Record.

**REQUEST NO. 18 — ADP OR OTHER PAYROLL INTEGRATION DATA**

If the Subject Merchant used Clover Payroll by ADP or any other payroll integration, produce all responsive records maintained by Clover concerning:

a. activation and termination dates;
b. Employee mapping between Clover and the payroll provider;
c. Employee/payroll identifiers;
d. hours transmitted for payroll;
e. wage or compensation information transmitted or received;
f. payroll status information transmitted or received;
g. payroll adjustments transmitted or received;
h. synchronization logs;
i. errors and failed transmissions;
j. rejected data;
k. retransmissions or corrected transmissions; and
l. information sufficient to determine whether an Employee's originally recorded hours differed from the hours ultimately transmitted for payroll.

**REQUEST NO. 19 — OTHER TIMEKEEPING, PAYROLL, ACCOUNTING, OR HR INTEGRATIONS**

Produce records sufficient to identify every third-party application or Integration connected to the Subject Merchant's Clover account during the Relevant Period that had permission or functionality to access, create, receive, transmit, modify, or store:

a. Employee information;
b. shifts;
c. Time Records;
d. schedules;
e. timesheets;
f. compensation information; or
g. payroll information.

For each such Integration, identify the provider, application, dates active, relevant permissions, and categories of data exchanged.

**REQUEST NO. 20 — USER ROLES AND PERMISSIONS**

Produce records sufficient to identify all users who, during the Relevant Period, possessed permission to:

a. create or modify Employee profiles;
b. create or modify shifts;
c. change clock-in or clock-out times;
d. delete Time Records;
e. approve timecards or timesheets;
f. change Employee pay rates;
g. run or approve payroll; or
h. configure timekeeping rules.

Include the user's Employee/user ID, role, applicable permission level, and effective dates of those permissions.

**REQUEST NO. 21 — CHANGES TO USER ROLES OR PERMISSIONS**

Produce records reflecting material changes during the Relevant Period to the roles or permissions of users capable of modifying Employee time or payroll information, including the date/time of the change, prior role or permissions, new role or permissions, and person or process making the change, to the extent maintained.

**REQUEST NO. 22 — AUDIT LOGS AND EVENT HISTORIES**

Produce all audit logs, event logs, modification histories, change histories, activity histories, transaction histories, database event records, or comparable records maintained by Clover that reflect the creation, modification, approval, deletion, restoration, transmission, or synchronization of any responsive Employee Time Record or Pay Record.

This Request includes audit information stored separately from the ordinary merchant-facing record or report.

**REQUEST NO. 23 — BULK EDITS, IMPORTS, AND API CHANGES**

Produce records reflecting any bulk modification, import, API request, integration process, batch operation, or other action that created, modified, deleted, or replaced Time Records or Pay Records for more than one Employee or more than one shift.

Include all available information identifying:

a. initiating user or process;
b. date/time;
c. records affected;
d. fields affected;
e. prior and resulting values; and
f. source application, API, import, or integration.

**REQUEST NO. 24 — REPORTS CONCERNING EMPLOYEE HOURS AND LABOR**

Produce all standard electronic reports generated or maintained for the Subject Merchant during the Relevant Period that reflect:

a. Employee hours;
b. timecards;
c. timesheets;
d. overtime;
e. breaks;
f. labor costs;
g. wages;
h. payroll; or
i. comparisons between labor costs and sales.

Where such reports are generated dynamically from underlying data, production of the underlying responsive data does not excuse production of any report that was actually saved, exported, transmitted, or retained.

**REQUEST NO. 25 — EXPORT HISTORY**

Produce records, if maintained, showing exports or downloads of Employee Time Records, timesheets, payroll records, or similar labor data by the Subject Merchant during the Relevant Period, including the date/time of export, user initiating the export, type of export, and date range exported.

**REQUEST NO. 26 — CONFIGURATION OF TIMEKEEPING SYSTEM**

Produce records sufficient to establish the material timekeeping configuration applicable to the Subject Merchant during the Relevant Period, including settings concerning:

a. clock-in and clock-out;
b. Employee ability to edit time;
c. manager or Administrator ability to edit time;
d. break tracking;
e. automatic deductions;
f. automatic clock-out;
g. rounding;
h. early clock-in restrictions;

i. overtime calculations or warnings;
j. required approvals; and
k. other settings capable of affecting recorded or compensable hours.

Produce records sufficient to identify material changes to those configurations and when each change became effective.

**REQUEST NO. 27 — DATA RETENTION AND DELETION INFORMATION**

Produce records sufficient to identify the retention status of the responsive categories of data requested herein, including:

a. whether Clover retains prior versions of edited Time Records;
b. whether Clover retains deleted shift records;
c. whether Clover retains Audit Data reflecting changes;
d. the retention period applicable to such records; and
e. whether any responsive category was purged, permanently deleted, or became unavailable before Clover received this subpoena.

This Request does not seek privileged legal advice or privileged communications concerning the subpoena.

**REQUEST NO. 28 — RECORDS NECESSARY TO INTERPRET THE PRODUCTION**

Produce documentation sufficient to interpret the responsive electronic production, including:

a. field definitions;
b. database or API field names;
c. meaning of status codes;
d. meaning of deletion fields;
e. meaning of override fields;
f. timestamp formats;
g. data units;
h. role codes;
i. application or integration identifiers; and
j. relationships among Employee, shift, payroll, and audit records.

**REQUEST NO. 29 — IDENTIFICATION OF DATA NOT HELD BY CLOVER**

For any category of Employee time or pay information requested herein that Clover contends is not maintained by Clover because the information resides exclusively with Homebase, ADP, another Integration, the Subject Merchant, or another entity, produce records sufficient to identify:

a. the category of information;
b. the entity believed to possess it;
c. the relevant application or service; and

d. the account, merchant, or integration identifier reasonably necessary to identify the Subject Merchant's records at that entity, to the extent disclosure of that identifier is permitted.

**SCHEDULE D — CERTIFICATION OF ELECTRONIC RECORDS**

The production should be accompanied by a declaration, affidavit, or certification from an appropriate custodian of records or other qualified person stating, to the extent applicable:

1. the declarant's name, title, and responsibilities;
2. that the declarant is familiar with Clover's manner of maintaining the records produced;
3. that the records produced are true and accurate copies or exports of records maintained by Clover in the ordinary course of its regularly conducted business activities;
4. that the records were made or maintained at or near the time of the acts, events, transactions, or conditions reflected therein, to the extent applicable;
5. that the records were made or maintained by, or from information transmitted by, persons or automated systems with knowledge of the matters recorded, to the extent applicable;
6. that maintaining such records was part of Clover's regularly conducted business activity, to the extent applicable;
7. the method used to identify and collect the responsive records;
8. the source system or systems from which the responsive data was extracted;
9. the file format or formats in which the data was produced;
10. whether any responsive structured data was converted from its native format and, if so, the nature of the conversion;
11. whether the production includes deleted records, override fields, adjustment information, and Audit Data requested in Schedules B and C;
12. whether timestamps in the production are stored in UTC, local time, Unix/epoch format, or another format, and sufficient information to interpret those timestamps;
13. whether the production represents all responsive records reasonably located after a diligent search of the systems reasonably expected to contain the requested information; and
14. if any category requested herein is not maintained by Clover or is maintained exclusively by an identified third-party service, the identity of that service and the category of data involved.

The declaration or certification should be executed in a form sufficient to authenticate the produced business records under the evidentiary rules applicable in the issuing jurisdiction.

**SCHEDULE E — SPECIFIC CLOVER SHIFT DATA REQUEST**

Without limiting any broader request above, produce for every shift associated with the Subject Merchant during the Relevant Period the complete electronic record corresponding to that shift, including any available fields or historical values corresponding to:

- id;
- employee identifier;
- employee name;

- inTime;
- outTime;
- overrideInTime;
- overrideOutTime;
- overrideInEmployee;
- overrideOutEmployee;
- deletedTime;
- cashTipsCollected;
- serverBanking;
- creation or modification timestamps, if maintained; and
- every additional field maintained in the responsive shift object or associated audit record.

The production shall preserve the distinction between the time originally recorded and any overridden or adjusted time.

If any field listed above is unavailable for a particular record, that absence should not be interpreted as authorization to omit other available fields.

**CONTINUING OBLIGATION / SUPPLEMENTATION**

If, before the date of compliance, Clover identifies additional responsive records or determines that an earlier production was incomplete or materially inaccurate, Clover is requested to supplement the production in accordance with the applicable rules governing the subpoena. Nothing herein requests disclosure of attorney-client privileged communications, attorney work product, passwords, authentication secrets, or information that is legally prohibited from disclosure. If responsive material is withheld on a claim of privilege or other legal protection, Clover should provide whatever identification or privilege information is required by the procedural rules governing the subpoena.