**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TERESA GONCALVES and DINA KETCHAM, ~~on behalf of themselves and all others similarly situated~~<br><br>Plaintiffs,<br><br>vs.<br><br>KRISTIN SHEELER DESIGNS, LLC, KRISTIN SHEELER, and JAMES "JIM" BRINNEN,<br><br>Defendants. | Case No.: 2:25-cv-~~04264~~4264 (GRB) (ST)<br><br>**FIRST AMENDED COLLECTIVE ACTION AND CLASS ~~ACTION~~ COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs Teresa Goncalves (hereinafter "Goncalves") and Dina Ketcham (hereinafter "Ketcham") (Goncalves and Ketcham collectively hereinafter the "Plaintiffs"), by and through ~~her~~their attorneys, ~~Consumer Attorneys PLLC~~Sage Legal LLC, on behalf of themselves and all others similarly situated, upon personal knowledge as to themselves and upon information and belief as to other matters, respectfully brings this Complaint against Defendants Kristin Sheeler Designs, LLC (hereinafter the "Corporate Defendant"), Kristin Sheeler ("Sheeler"), and James "Jim" Brinnen ("Brinnen") (Sheeler and Brinnen collectively hereinafter the "Individual Defendants") (the Corporate Defendant and the Individual Defendants collectively hereinafter the "Defendants") and alleges as follows:

## INTRODUCTION

1. Plaintiffs bring this lawsuit seeking recovery against Defendants primarily for their ~~various willful~~ violations of the Fair Labor Standards Act, as amended (hereinafter the "FLSA~~")~~"),

29 U.S.C. §201 *et seq.* and the New York Labor Law §§ 190 *et seq.* and §§ 650 *et seq*. (hereinafter the "NYLL").

2. Upon information and belief, over the last six (6) years, Defendants carried out an unlawful payroll policy and practice by failing to pay Plaintiffs for all worked hours as required by law, including non-payment of overtime compensation, and failing to remit payroll taxes to the federal, state, and local taxing authorities despite deducting said taxes from Plaintiffs' and other employees' paychecks; failing to pay wages on the regular payday required by NYLL § 191; making unlawful deductions from wages within the meaning of NYLL § 193; and retaliating against employees who complained about unpaid wages, including by reducing hours and constructively discharging them, in violation of the FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215.

3. Upon information and belief, Defendants willfully filed one or more information returns concerning payments to Plaintiffs that contained materially false information concerning wages and/or compensation paid to Plaintiffs, including by omitting compensation and/or reporting materially inaccurate payment information, in violation of 26 U.S.C. § 7434(a).

~~3.~~4. Plaintiffs have therefore commenced this ~~action~~case to recover unpaid wages that they have been deprived of as well as the unlawful deductions taken from their pay, plus interest (pre-~~-~~judgment and post-judgment), liquidated damages, attorneys' fees, and costs on behalf of themselves and all others similarly situated.

**JURISDICTION AND VENUE**

~~4.~~5. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA~~.~~ and 26 U.S.C. § 7434(a).

~~5.~~6. The Court also has supplemental jurisdiction over Plaintiffs' related NYLL and/or common law claims arising under State and/or local laws pursuant to 28 U.S.C. § 1367.

~~6.~~7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, i.e., Plaintiffs performed the work for Defendants in the Hamptons and Montauk within Suffolk County, New York.

~~7.~~8. At all times material hereto, Plaintiffs performed non-exempt duties for the benefit of Defendants in New York including within the ~~State~~City of New York.

~~8.~~9. At all times relevant, ~~Defendant~~Defendants engaged in interstate commerce or in the production of interstate goods for commerce as defined by the Act, 29 U.S.C. §§ 203(r) and 203(s), and had revenues exceeding $500,000.00 per year over the last three (3) years.

~~9.~~10. Plaintiffs fall within the protections of the FLSA and ~~satisfies~~satisfy the individual coverage requirements because Plaintiffs engaged in interstate commerce by selling goods made in interstate commerce such as the clothing that Defendants sold at their stores.

**PARTIES**

~~10.~~11. Plaintiff Goncalves is an adult individual who resides in Suffolk County within the State of New York.

~~11.~~12. Plaintiff Ketcham is an adult individual who resides in Suffolk County within the State of New York.

~~12.~~13. Plaintiff Goncalves was employed by the Defendants in the State of New York during the period ~~of~~from May 2021 to April 2023.

~~13.~~14. Plaintiff Ketcham was likewise employed by the Defendants in the State of New York during the period ~~of~~from September 2022 to December 31, 2024.

~~14.~~15. The Corporate Defendant is a business entity organized under the laws of the State of New York.

~~15.~~16. Sheeler is an adult individual residing within the State of New York, County of Suffolk, and is ~~a principal of the Corporate Defendant~~an owner, member, and/or principal of the Corporate Defendant who exercised operational control over Plaintiffs' employment, including hiring and firing authority, setting rates of pay and schedules, directing day-to-day store operations, and controlling payroll and tax reporting.

17. Brinnen is an adult individual residing within the State of New York, County of Suffolk, and is ~~a~~an owner, member, and/or principal of the Corporate Defendant who exercised operational control over Plaintiffs' employment, including control over payroll, commissions, reimbursements, tax withholdings and remittances, and employment-tax and wage reporting to federal and State authorities.

~~16.~~18. At all times relevant, Sheeler and Brinnen were "employers" of Plaintiffs within the meaning of 29 U.S.C. § 203(d) and NYLL § 190(3), under the economic-reality test, because they possessed and exercised the power to hire and fire Plaintiffs, supervise and control their work schedules and conditions of employment, determine the rate and method of payment, and maintain employment records.

~~17.~~19. At all times relevant, Defendants employed Plaintiffs to perform work on behalf of Defendants within the State of New York.

## STATEMENT OF FACTS

~~18.~~20. Based upon the information preliminarily available, and subject to discovery in this cause, Defendants did not properly compensate Plaintiffs for all hours worked for every workweek.


4

~~19.~~21. Plaintiff Goncalves began working for Defendants in or around May 2021, as a Store Branch Manager and worked approximately sixty (60) to seventy (70) hours per week.

~~20.~~22. Plaintiff Goncalves' first day ~~in~~of work was strange because she observed that the stockroom of Defendants looked like a sweatshop with seventeen (17) girls, more or less, in steaming dresses working inside Defendants' premises without any air-conditioning unit.

~~21.~~23. During the winter season in 2022, Plaintiff Goncalves observed that there was no heater in Defendants' store and she had no choice but to simply wear extra ~~layer~~layers of clothes to keep herself warm.

~~22.~~24. Plaintiff Goncalves ~~later~~ learned that Defendants did not pay their ~~bills~~bill, which is the reason no heater was operating during the winter season.

~~23.~~25. In the summer of 2022, Defendants asked ~~the~~ Plaintiff Goncalves to buy a driftwood table for Defendants' fitting room with a promise to reimburse her.

~~24.~~26. However, it took several months before Defendants actually reimbursed Plaintiff Goncalves despite the timely submission of the receipt to the Defendants.

~~25.~~27. During the course of her employment, Plaintiff Goncalves was directed and controlled by the Defendants.

~~26.~~28. According to an agreement between Plaintiff Goncalves and Defendants, Plaintiff Goncalves was to be paid ~~in the amount of $23.00 per hour~~initially at the rate of $23.00 per hour, plus commissions, and was later converted to a salary arrangement after her one-year review, while continuing to work hours that regularly exceeded forty (40) hours in a workweek.

~~27.~~29. During the relevant period, Plaintiff Goncalves worked approximately sixty (60) hours per week but she was not paid for all the hours worked ~~she rendered for the benefit of the Defendants~~for the benefit of the Defendants, including overtime at one and one-half times her

regular rate for hours over forty (40) in a workweek, and including time spent opening and closing the store and performing off-the-clock tasks. Employer time and payroll records produced in discovery reflect multiple workweeks exceeding forty (40) hours and unpaid overtime premiums, including unpaid overtime on commissions.

~~28.~~30. On the other hand, Plaintiff Ketcham began working for Defendants in or around September 2022, as an Associate, and was later ~~on~~ designated as the Acting Manager at the Westhampton Beach location,[1] and worked approximately fifty (50) hours per week.

~~29.~~31. Plaintiff Ketcham was assigned by Defendants to their stores in Montauk and Bridgehampton, with an agreed upon initial wage rate of $20.00 per hour.

~~30.~~32. During her interview, Plaintiff Ketcham was informed by Defendants that she would receive a commission, but she did not begin receiving ~~it~~commission until ~~Plaintiff Ketcham~~she brought ~~it~~the omission to ~~the~~ Defendants' attention months later, and even thereafter Defendants failed to calculate and pay commissions and overtime on commissions accurately.

~~31.~~33. In the course of her employment, Plaintiff Ketcham was using her vehicle on numerous occasions for the benefit of the Defendants, transporting merchandise ~~to~~ and ~~from work~~decorations between Defendants' Bridgehampton, Montauk, and Westhampton Beach locations during off hours without ~~getting~~being paid for that time or reimbursed for mileage and vehicle expenses.

~~32.~~34. Although Plaintiff Ketcham was performing duties for the benefit of the Defendants, she was not being properly compensated.

~~33.~~35. Plaintiff Ketcham, observing that her overtime pay was not being accurately computed, took ~~screen shots~~screenshots of her clock-ins.

[1] Defendants offered Plaintiff Ketcham a $3.00 per hour raise in fear that she would quit.

~~34.~~36. In the ~~Summer~~summer of 2023, Plaintiff Ketcham complained to Defendants ~~for~~that she had not ~~getting~~been paid for several weeks, in violation of Defendants' obligation to pay wages on the regular payday designated by the employer under NYLL § 191.

~~35.~~37. Plaintiff Ketcham was not the only employee who complained; Cathy, Natalie, and a couple of seasonal employees similarly complained directly to Plaintiff Ketcham that they were similarly not getting paid.

~~36.~~38. In 2024, Plaintiff Ketcham interviewed applicants for the Defendants, but despite such activities, Defendants did not pay Plaintiff Ketcham for her time spent interviewing applicants.

~~37.~~39. Plaintiff Ketcham approached Sheeler to inquire about ~~her~~ being directed to perform additional duties without ~~being paid~~compensation and ~~giving her~~to request additional compensation for ~~the added~~those duties.

~~38.~~40. Sheeler proceeded to tell the Plaintiff Ketcham that she was responsible for the aforesaid duties the entire time, although Defendants did not pay her wages for those duties in any event.

~~39.~~41. Like Plaintiff Goncalves, Plaintiff Ketcham was frequently required to perform work before the start of her shift and after the end of her shift without being paid; a few examples follow.

~~40.~~42. On December 6, 2024, Plaintiff Ketcham picked up holiday decorations from Bridgehampton to bring to Montauk on her way, but she was not paid by Defendants for that time.

~~41.~~43. On December 13, 2024, Plaintiff Ketcham picked up merchandise from ~~Bridge Hampton~~Bridgehampton to go to Montauk on her way to work, but similarly, Plaintiff Ketcham was not paid by Defendants for that time.

44. Ketcham's agreed rate of pay increased over time from $20.00 per hour to $23.00 per hour and later to $27.00 per hour, reflecting her assumption of additional duties at the Westhampton Beach location. Defendants required her to perform managerial duties, including interviewing applicants on her own time, without timely adjusting her compensation or paying her for all hours spent on those duties.

45. When Ketcham completed her Form W-4, she elected additional tax withholding of approximately $150.00 per pay period to avoid a year-end tax liability. Defendants deducted those amounts from her wages. Upon information and belief, Defendants failed to remit the withheld taxes, and Ketcham subsequently was unable to obtain her tax refunds for multiple years, was required to submit bank records and other employment proof to the IRS (including through an IRS Taxpayer Advocate), and spent substantial time and expense resolving the resulting tax controversies.

46. Defendants failed to timely furnish Ketcham a Form W-2 for at least one tax year. She was required to email Brinnen to obtain it and did not receive it until approximately March, when by law her employer was required to provide it by January 31.

47. On or about October 25, 2024, Defendants' Westhampton Beach boutique suffered a fire. Thereafter, Defendants reduced Ketcham's hours from full-time managerial hours to part-time hours split among Bridgehampton and Montauk, failed to pay holiday pay she customarily received, and failed to pay accrued personal or vacation days. When Ketcham advised that she would need to seek unemployment benefits to make up the pay difference, and after she had previously complained about unpaid wages, unpaid commissions, unpaid off-the-clock work, and unpaid managerial duties, Defendants further reduced and then eliminated her scheduled hours, culminating in her constructive discharge on or about December 31, 2024.

~~42.~~48. At all times relevant, Defendants had actual or constructive knowledge and otherwise suffered or permitted Plaintiffs to perform compensable work duties.

~~43.~~49. At all times relevant, Defendants had actual knowledge that they were obligated under the FLSA to track and record Plaintiffs' compensable hours accurately and with precision.

~~44.~~50. Plaintiffs, by reason of the non-payment of ~~her~~their wages, were then forced to stop reporting for work with Defendants after ~~having~~ their complaints concerning the same fell on deaf ears.

~~45.~~51. At all times during their employment with the Defendants, Plaintiffs were exemplary employees who never received any citation or negative feedback regarding their work performance.

52. ~~Upon information and belief, Defendant~~Throughout Goncalves's employment, Defendants deducted payroll taxes and other withholdings from her pay. Upon information and belief, Defendants failed to remit all such withholdings to the appropriate taxing authorities. Goncalves later experienced tax-reporting and refund problems attributable to Defendants' inaccurate wage and tax reporting.

53. Defendants also failed to furnish Goncalves a Form W-2 on a timely basis for at least one tax year, requiring her to email Brinnen to obtain it, and she did not receive it until approximately March of the following year, when it was required to be provided no later than January 31.

~~46.~~54. Upon information and belief, Defendants at all times during the relevant time period willfully failed to keep accurate payroll records as required by the FLSA.

~~47.~~55. As a result of Defendants' violation and failure to pay proper wages, Plaintiffs suffered concrete harm resulting from Plaintiffs' lack of pay that they should have received for their hours worked in compliance with the FLSA.

~~48.~~56. Furthermore, Defendants' willful failure to keep accurate records of Plaintiffs' hours worked prevented Plaintiffs from being able to calculate their total hours worked and determine ~~if they were being paid in accordance with the FLSA.~~whether, and to what extent, they were underpaid, and thereby delayed and impeded their ability to obtain full and timely payment of wages owed. Plaintiffs also suffered concrete downstream harms from Defendants' inaccurate and incomplete wage notices and wage statements, including unpaid overtime and commissions they could not timely identify and correct, tax-refund delays and IRS controversies caused by inaccurate wage reporting, and underpayment of unemployment benefits caused by Defendants' misstatements of Ketcham's compensation.

~~49.~~57. In retaliation for Plaintiff Ketcham's complaints concerning wages, Defendants reduced her hours of work, denied holiday and paid-time-off compensation, misreported her compensation to the New York State unemployment authorities, and otherwise made continued employment intolerable, resulting in her constructive discharge on or about December 31, 2024.

~~50.~~58. Further, when Plaintiff Ketcham applied for unemployment, Defendants lied to the State of New York concerning her actual compensation paid in order to reduce her unemployment benefits.

59. Ketcham subsequently encountered IRS, tax-refund, and Social Security reporting problems. In reviewing her Social Security account with her accountant, she learned that reported Social Security earnings or contributions for 2022, 2023, and 2024 were materially inconsistent with the employment and wages she actually received.

60. Upon information and belief, Defendants controlled the payroll, wage reporting, and employment-tax reporting for Plaintiffs and possessed the records necessary to report accurately the payments made to Plaintiffs.

61. Upon information and belief, Defendants issued and/or caused to be issued wage and tax documents concerning Plaintiffs' compensation and represented that payroll taxes were being withheld and handled as required by law.

62. Plaintiffs' federal earnings histories and tax-related records later revealed that Defendants' reporting did not accurately reflect the employment and compensation that Defendants themselves had paid or represented as paid.

63. Upon information and belief, Defendants filed information returns with the Internal Revenue Service and/or Social Security Administration concerning payments to Plaintiffs that materially understated, omitted, or otherwise falsely stated payments made to Plaintiffs.

64. Defendants filed Forms W-2 which, under 26 U.S.C. § 6724(d)(1)(A), were materially false insofar as they failed accurately to state the payments actually made to Plaintiffs and/or the employment compensation Defendants knew Plaintiffs had earned and received.

~~51.~~65. As a result of these violations of labor laws and federal tax laws, Plaintiffs seek compensatory damages and liquidated damages in an amount to be determined at trial.

~~52.~~66. Plaintiffs also seek interest (pre-~~judgment~~judgement and post-judgment), ~~attorney's~~attorneys' fees, costs, and all other legal and equitable remedies this Court deems appropriate.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

~~53.~~67. Plaintiffs bring this FLSA claim as a collective action on behalf of themselves and others similarly situated who have been employed by Defendants during the full statute of limitations period (hereinafter the "FLSA Collective Members").

~~54.~~68. At all relevant times, Plaintiffs and the FLSA Collective Members were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, and were subject to Defendants' practices of: (i) failing to compensate Plaintiffs and the FLSA Collective Members at one and one-half times their regular rate of pay for all hours worked in excess of ~~forty (~~40~~)~~ hours in a workweek; and (ii) failing to timely pay all wages owed.

~~55.~~69. At all relevant times, Defendants have been fully aware of the duties performed by Plaintiffs and the FLSA Collective Members, and that those duties were not exempt from the provisions of the FLSA.

~~56.~~70. Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiffs and the FLSA Collective Members.

~~57.~~71. As a result of their unlawful conduct, Defendants are liable to Plaintiffs and the FLSA Collective Members for the full amount of their unpaid wages and late wages, with interest (pre-judgment and post-judgment), plus an equal amount as liquidated damages, plus reasonable attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective Members.

~~58.~~72. While the exact number of the FLSA Collective is unknown to Plaintiffs at this time, upon information and belief, there are approximately twenty (20) individuals of the FLSA Collective Members.

~~59.~~73. Plaintiffs are currently unaware of the identities of the individual members of the FLSA Collective Members.

~~60.~~74. Accordingly, the Court should require Defendants to provide Plaintiffs with a list of all individuals of the proposed FLSA Collective Members, along with their last known addresses, telephone numbers, and email addresses, so Plaintiffs may provide the members of the FLSA Collective Action notice of this action and an opportunity to make an informed decision about whether to participate in it.

## CLASS ACTION ALLEGATIONS

~~61.~~75. Plaintiffs bring this action, in part, as a class action under the NYLL as well as all applicable regulations thereunder.

### A. ~~A.~~ Class Definition

~~62.~~76. Plaintiffs seek to maintain claims, pursuant to Rule 23, on behalf of themselves and a class of all other employees who have been employed by Defendants at any time during the full statute of limitations period (hereinafter the "Class").

~~63.~~77. Additionally, Plaintiffs seek to maintain claims, pursuant to Rule 23, on behalf of themselves and a subclass of all individuals who have been employed by Defendants at any time during the full statute of limitations period (hereinafter the "Subclass").

~~64.~~78. Plaintiffs allege, on behalf of themselves and the Class, that Defendants violated the NYLL by, *inter alia*: (i) failing to compensate Plaintiffs and the Class for all hours worked at their established regular rates of pay in accordance with their agreed terms of employment; (ii) failing to compensate Plaintiffs and the Class at one and one-half times their regular rate of pay for all hours worked in excess of ~~forty (~~40~~)~~ hours in a workweek; (iii) failing to timely pay all wages owed; (iv) failing to provide Plaintiffs and the Class with Notices of Pay Rate; and (v) failing to

furnish accurate wage statements to Plaintiffs ~~and the Class~~and the Class; (vi) failing to pay wages on the frequency required by NYLL § 191; (vii) making unlawful deductions from wages in violation of NYLL § 193; and (viii) retaliating against employees for complaining about wage violations in violation of NYLL § 215.

~~65.~~79. Plaintiffs further allege, on behalf of themselves and the Subclass, that Defendants violated the NYLL by, *inter alia*, failing to compensate them and the Subclass at the State minimum wage for all hours worked.

~~66.~~80. Plaintiffs, the Class, and the Subclass have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

~~67.~~81. The wage practices described herein are part of Defendants' normal course of conduct.

~~68.~~82. Pursuant to Rule 23, Plaintiffs' NYLL claims may be pursued by all similarly situated persons who do not opt out of the Class or Subclass.

**B. Numerosity and Impracticability of Joinder**

~~69.~~83. The members of the Class and Subclass are so numerous that joinder is impracticable.

~~70.~~84. While the exact number of the members of the Class is unknown to Plaintiffs at this time, upon information and belief, there are approximately twenty (20) members of the Class.

~~71.~~85. While the exact number of the members of the Subclass is unknown to Plaintiffs at this time, upon information and belief, there are approximately twenty (20) members of the Subclass.

~~72.~~86. Therefore, the numerosity requirement of Rule 23(a) is satisfied.

**C. Common Questions of Law and Fact**

~~73.~~87. Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the Class and Subclass and predominate over any questions only affecting the members of the Class or Subclass individually.

~~74.~~88. Indeed, there are few, if any, purely individual issues in this action.

~~75.~~89. The questions of law and fact that are common to Plaintiffs, the Class, and the Subclass include, without limitation:

(a) ~~(a)~~ Whether Defendants failed to pay Plaintiffs and the Subclass at the State minimum wage rate;

(b) ~~(b)~~ Whether Defendants failed to pay Plaintiffs and the Class for all hours worked at their regular rates of pay and in accordance with their agreed terms of employment;

(c) ~~(c)~~ Whether Defendants failed to pay Plaintiffs and the Class all overtime wages owed to them;

(d) ~~(d)~~ Whether Defendants failed to timely pay Plaintiffs and the Class their wages;

(e) ~~(e)~~ Whether Defendants failed to provide Plaintiffs and the Class with Notices of Pay Rate;

(f) ~~(f)~~ Whether Defendants failed to furnish accurate wage statements to Plaintiffs and the Class; and

(g) ~~(g)~~ Whether Plaintiffs, the Class, and the Subclass are entitled to liquidated damages and injunctive relief.

~~76.~~90. Therefore, the common question requirement of Rule 23(a) is satisfied.

**D. Typicality of Claims and Relief Sought**

~~77.~~91. Plaintiffs' claims are typical of the claims of the members of the Class and Subclass they seek to represent.

~~78.~~92. Plaintiffs, the Class, and the Subclass work or have worked for Defendants, and are or were subject to the same compensation policies and practices.

~~79.~~93. The wage violations suffered by Plaintiffs, and the damages resulting therefrom, are typical of Defendants' treatment of their Employees, generally, and of the Class and Subclass, specifically.

~~80.~~94. Therefore, the typicality requirement of Rule 23(a) is satisfied.

**E. Adequacy of Representation**

~~81.~~95. Plaintiffs will fairly and adequately protect the interests of the Class and Subclass because ~~Plaintiffs 's~~Plaintiffs' interests are coextensive and aligned with those of the members of the Class and Subclass.

~~82.~~96. Plaintiffs have no interests adverse to the Class and Subclass they seek to represent.

~~83.~~97. Plaintiffs are willing and able to represent the Class and Subclass fairly and vigorously, in part because they do not assert any individual claims separate and apart from the Class and Subclass ~~she seeks~~they seek to represent.

~~84.~~98. Plaintiffs have retained competent counsel who ~~is~~are qualified and experienced in employment class action litigation and able to meet the demands necessary to litigate a class action of this size and complexity.

~~85.~~99. The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and Class claims at issue in the instant action satisfy the adequacy of representation requirement of Rule 23(a).

**F. Requirements of Rule 23(b)(1)**

~~86.~~100. Without certification of the Class and Subclass, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

~~87.~~101. Accordingly, certification of the Class and Subclass is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the Class, the Subclass, and Defendants.

~~88.~~102. By filing this Complaint, Plaintiffs preserve the rights of the members of the Class and Subclass with respect to the statute of limitations on their claims.

~~89.~~103. Therefore, failing to certify the Class and Subclass would substantially impair and/or impede the ability of the members of the Class and Subclass to protect their interests.

**G. Requirements of Rule 23(b)(2)**

~~90.~~104. Defendants acted on grounds, as described herein, generally applicable to Plaintiffs, the Class, and the Subclass by denying Plaintiffs and the Subclass minimum wages, and denying Plaintiffs and the Class overtime wages, failing to pay them for all hours worked at their established rates of pay in accordance with their agreed terms of employment, failing to pay wages on time, and failing to provide Notices of Pay Rate and furnish accurate wage statements.

~~91.~~105. These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiffs, the Class, and the Subclass as a whole.

~~92.~~106. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, minimum and overtime wages, wages paid at their regular rates of pay, timely payment of wages, Notices of Pay Rate and accurate wage statements.

~~93.~~107. Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs' ~~and~~, the Class's, and Subclass's entitlement to monetary and non-monetary remedies for such wage violations.

~~94.~~108. Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**H. Requirements of Rule 23(b)(3)**

~~95.~~109. The common issues of fact and law affecting Plaintiffs' claims and those of the Class and Subclass — including, without limitation, the common issues identified in the paragraphs above — predominate over issues affecting only individual claims.

~~96.~~110. A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and those of the Class and Subclass.

~~97.~~111. The cost of proving Defendants' pattern and practice of denying minimum, overtime, and other wages makes it impractical for the members of the Class and Subclass to pursue their claims individually.

~~98.~~112. This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the Class and Subclass (they must have worked for Defendants as Employees during the statutory period), as well as the common questions of law and fact described herein.

## CAUSES OF ACTION

### COUNT ~~I~~ONE

### ~~VIOLATION OF THE~~VIOLATION OF THE FLSA: ~~UNPAID WAGES AND OVERTIME~~UNPAID WAGES AND OVERTIME PAY

**(*on behalf of the Plaintiffs and the Collective Action Members*)**

~~99.~~113. Plaintiffs re-allege, and incorporate here by reference, all allegations contained in the paragraphs above.

~~100.~~114. Defendants knowingly and willfully failed to pay Plaintiffs and the Collective Action Members their wages and overtime compensation for the actual hours that they worked.

~~101.~~115. Similarly, Defendants are liable to the Plaintiffs and the Collective Action Members for associated damages pursuant to 29 U.S.C. § 206(a)(1) and under the NYLL.

~~102.~~116. By reason of the said intentional, willful, and unlawful acts of ~~Defendant~~Defendants, Plaintiffs have suffered damages and have incurred costs as well as reasonable attorneys' fees.

~~103.~~117. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 225.

~~104.~~118. Because Defendants' violations of the FLSA and NYLL were not the product of objective good faith or otherwise objectively excusable, Plaintiffs are entitled to liquidated damages.

~~105.~~119. As a result of Defendants' unlawful acts, Plaintiffs have been deprived of ~~her~~their wages in amounts to be determined at trial, and ~~is~~are entitled to recovery of such amounts, liquidated damages, attorneys' fees, costs, and interest (pre-judgment and post-judgment).

**COUNT TWO**
**~~VIOLATION OF THE~~VIOLATION OF THE NYLL: ~~FAILURE TO PAY OVERTIME~~FAILURE TO PAY OVERTIME**
**(*on behalf of the Plaintiffs and the Class*)**

~~106.~~120. Plaintiffs re-allege, and incorporate here by reference, all allegations contained in the paragraphs above.

~~107.~~121. Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

~~108.~~122. During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, et seq., as well as all applicable regulations thereunder.

~~109.~~123. The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek and at a rate not less than one and one-half times the applicable State minimum wage for all hours worked in excess of ~~forty~~ 40 hours in a workweek.

~~110.~~124. Plaintiffs and the Class were not exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of forty (40) hours in a workweek during the full statute of limitations period.

~~111.~~125. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the Class at a rate not less than one and one-half times their regular rate of pay for time spent performing off-the-clock work in excess of forty (40) hours in a workweek.

~~112.~~126. As a result of Defendants' failure to compensate Plaintiffs and the Class at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

~~113.~~127. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

~~114.~~128. Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**COUNT THREE**

~~VIOLATION OF THE NYLL: FAILURE TO PAY ALL WAGES & WAGE SUPPLEMENTS OWED~~

**VIOLATION OF THE NYLL: FAILURE TO PAY ALL WAGES OWED**

**(*on behalf of the Plaintiffs and the Class*)**

~~115.~~129. Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

~~116.~~130. During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq*., as well as all applicable regulations thereunder.

~~117.~~131. The NYLL requires covered employers, including Defendants, to compensate Plaintiffs and the Class at their established regular rates of pay for all hours worked in a workweek~~ and to pay wage supplements such as holiday pay set forth in Defendants' employment policies~~.

~~118.~~132. Plaintiffs and the Class were not exempt from the requirement and are entitled to be paid by Defendants at their established regular rates of pay for all hours worked in a workweek~~ plus any wage supplements as set forth in Defendants' policies~~, during the full statute of limitations period.

~~119.~~133. Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of failing to pay Plaintiffs and the Class at their established regular rates of pay for all hours worked.

~~120.~~134. As a result of Defendants' failure to compensate Plaintiffs and the Class at their established regular rates of pay (or one and one-half times their established regular rates) for all hours worked, Defendants have violated the NYLL and/or applicable regulations thereunder.

~~121.~~135. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the Class in accordance with the NYLL.

~~122.~~136. Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, the total amount of their unpaid wages and wage supplements, an additional equal amount in liquidated damages, prejudgment interest, and attorneys' fees and costs.

**COUNT FOUR**
**VIOLATIONS OF THE NYLL: NOTICES OF PAY RATE**
**(*on behalf of the Plaintiffs and the Class*)**

~~123.~~137. Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

~~124.~~138. During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq*., as well as all applicable regulations thereunder.

~~125.~~139. The NYLL requires covered employers, including Defendants, to provide employees, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ; the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of

the employer; plus such other information as the commissioner deems material and necessary," which is commonly referred to as a Notice of Pay Rate.

~~126.~~140. Plaintiffs and the Class were not exempt from the requirement that Defendants provide them with Notices of Pay Rate.

~~127.~~141. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiffs and the Class.

~~128.~~142. As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiffs and the Class, Defendants have violated, *inter alia*, NYLL § 195.

~~129.~~143. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper notices to Plaintiffs and the Class in accordance with the NYLL.

~~130.~~144. Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, $50~~.00~~ for each workday the violation occurred, not to exceed $5,000~~.00~~, plus attorneys' fees and costs.

**COUNT FIVE**
**VIOLATIONS OF THE NYLL: INACCURATE WAGE STATEMENTS**
**(*on ~~Behalf~~behalf of Plaintiffs and the Class*)**

~~131.~~145. Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

~~132.~~146. During the full statutory period, Plaintiffs and the Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, *et seq*., as well as all applicable regulations thereunder.

~~133.~~147. The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage . . . ; and net wages."

~~134.~~148. Plaintiffs and the Class were not exempt from the requirement that Defendants provide them with accurate wage statements.

~~135.~~149. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to furnish accurate wage statements to Plaintiffs and the Class.

~~136.~~150. As a result of Defendants' failure to furnish accurate wage statements to Plaintiffs and the Class, Defendants have violated, *inter alia*, NYLL § 195.

~~137.~~151. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to furnish proper wage statements to Plaintiffs and the Class in accordance with the NYLL.

~~138.~~152. Defendants' violations of the NYLL have significantly damaged Plaintiffs and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, $250~~.00~~ for each workday the violation occurred, not to exceed $5,000~~.00~~, plus attorneys' fees and costs.

## COUNT SIX
## VIOLATIONS OF 26 U.S.C. § 7434(a): FRAUDULENT FILING OF INFORMATION RETURNS
***(on behalf of Plaintiffs and the Class)***

153. Plaintiffs, on behalf of themselves and the Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

154. 26 U.S.C. § 7434 provides a private cause of action for individuals harmed by the filing of a fraudulent information return.

155. Defendants issued and/or caused to be filed an "information return" within the meaning of 26 U.S.C. § 7434 concerning payments purportedly made to Plaintiffs and the Class.

156. The information return or returns were fraudulent because they materially misstated payments made to Plaintiffs and the Class, including by understating, omitting, or otherwise inaccurately reporting compensation that Defendants knew they had paid or caused to be paid.

157. Defendants willfully filed or caused the filing of the fraudulent information return or returns. Their knowledge and intent are plausibly shown by their direct control of payroll, their knowledge of actual payments and deductions, and the material discrepancy between those payments and the information reported to federal, state, and local authorities.

158. Defendants' violations of 26 U.S.C. § 7434 have significantly damaged Plaintiffs and the Class and entitle them to recover damages to the greatest extent permitted by law, including, *inter alia*, to the greater of $5,000.00, or any actual damages sustained by the plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), plus attorneys' fees and costs.

## COUNT SEVEN
## Violation of the FLSA: Retaliation — 29 U.S.C. § 215(a)(3)
***(on behalf of Plaintiff Ketcham and similarly situated employees)***

159. Plaintiffs re-allege, and incorporate here by reference, all allegations contained in the paragraphs above.

160. The FLSA prohibits any person from discharging or in any other manner discriminating against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to the FLSA, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee. 29 U.S.C. § 215(a)(3).

161. Ketcham engaged in protected activity by complaining to Defendants about unpaid wages, unpaid overtime, unpaid commissions, and unpaid off-the-clock and managerial work.

162. In response, Defendants took adverse employment actions against Ketcham, including reducing her hours, denying holiday and paid-time-off compensation, misreporting her wages to unemployment authorities, and constructively discharging her.

163. A causal connection exists between Ketcham's protected activity and the adverse actions, as demonstrated by temporal proximity and Defendants' course of conduct following her complaints.

164. Defendants' retaliation was willful. Ketcham is entitled to all relief available under 29 U.S.C. § 216(b), including lost wages, liquidated damages, equitable relief, attorneys' fees, and costs.

## COUNT EIGHT
## Violation of NYLL § 215: Retaliation
***(on behalf of Plaintiff Ketcham and the Class)***

165. Plaintiffs re-allege, and incorporate here by reference, all allegations contained in the paragraphs above.

166. NYLL § 215 prohibits an employer from discharging, threatening, penalizing, or in any other manner discriminating or retaliating against an employee because the employee has complained that the employer has violated any provision of the NYLL.

167. Ketcham complained that Defendants violated the NYLL by failing to pay wages, overtime, commissions, and for all hours worked.

168. Defendants retaliated as alleged above. Ketcham and similarly situated employees are entitled to all remedies under NYLL § 215, including lost compensation, liquidated damages, enjoinment of unlawful conduct, and attorneys' fees and costs.

**COUNT NINE**
**Violation of NYLL § 191: Frequency of Pay**
***(on behalf of Plaintiffs and the Class)***

169. Plaintiffs re-allege, and incorporate here by reference, all allegations contained in the paragraphs above.

170. NYLL § 191 requires employers to pay manual workers weekly and other covered employees on the regular payday designated in advance by the employer, and not later than the time required by statute.

171. Defendants failed to pay Plaintiffs and the Class on the required paydays, including by skipping entire pay periods and paying wages late, as when Ketcham and other employees went unpaid for several weeks in 2023.

172. Defendants' violations entitle Plaintiffs and the Class to the underpayments as liquidated damages, interest, attorneys' fees, and costs to the fullest extent permitted by law, including under NYLL § 198.

**COUNT TEN**
**Violation of NYLL § 193: Unlawful Deductions from Wages**
***(on behalf of Plaintiffs and the Class)***

173. Plaintiffs re-allege, and incorporate here by reference, all allegations contained in the paragraphs above.

174. NYLL § 193 prohibits employers from making any deduction from wages except as expressly authorized by law or by the employee for the employee's benefit under specified conditions.

175. Defendants deducted payroll taxes and additional withholdings from Plaintiffs' wages and, upon information and belief, failed to remit those amounts to the taxing authorities, converting authorized withholdings into unlawful deductions and/or failing to apply them for Plaintiffs' benefit.

176. Defendants' unlawful deductions damaged Plaintiffs and the Class and entitle them to recovery of the deducted amounts, liquidated damages, interest, attorneys' fees, and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective Members, the Class, and the Subclass, respectfully request that the Court:

A. ~~A.~~ Declare that the practices complained of herein are unlawful under applicable federal and State laws;

B. ~~B.~~ Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. ~~C.~~ Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiffs with a list of all members of the FLSA Collective Members, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D. ~~D.~~ Designate Plaintiffs as the representatives of the FLSA Collective Members, and their counsel of record as class counsel;

E. ~~E.~~ Determine the damages sustained by Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of Plaintiffs and the FLSA Collective Members, plus such pre-judgment and post-judgment interest as may be allowed by law;

F. ~~F.~~ Declare this action to be maintainable as a class action pursuant to Rule 23, and direct Defendants to provide Plaintiffs with a list of all members of the Class and Subclass, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

G. ~~G.~~ Designate Plaintiffs as the representatives of the Class, and their counsel of record as class counsel;

H. ~~H.~~ Designate Plaintiffs as the representatives of the Subclass, and their counsel of record as class counsel;

I. ~~I.~~ Determine the damages sustained by Plaintiffs, the Class, and the Subclass as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs, the Class, and the Subclass, plus such pre-judgment and post-judgment interest as may be allowed by law;

J. ~~J.~~ Award Plaintiffs, the FLSA Collective, the Class, and the Subclass an additional equal amount as liquidated damages because Defendants' violations were without a good faith basis;

K. ~~K.~~ Determine the damages sustained by Plaintiffs, the Class, and the Subclass as a result of Defendants' violations of 26 U.S.C. § 7434, and award those damages against Defendants and in favor of Plaintiffs, the Class, and the Subclass, plus such pre-judgment and post-judgment interest as may be allowed by law;

L. Award Plaintiffs, the FLSA Collective, the Class, and the Subclass their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

M. ~~L.~~ Award Plaintiff Ketcham and similarly situated employees all damages and equitable relief available for Defendants' retaliation under 29 U.S.C. § 215(a)(3) and NYLL § 215, including lost wages, liquidated damages, and reinstatement or front pay as appropriate;

N. Award Plaintiffs, the Class, and the Subclass damages for Defendants' violations of NYLL §§ 191 and 193, including unpaid wages, unlawfully deducted wages, liquidated damages, and interest;

O. Grant Plaintiffs, the FLSA Collective, the Class, and the Subclass such other and further relief that the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs ~~demands~~demand a trial by jury on all questions of fact raised by the complaint.

Dated: ~~Flushing~~ Jamaica, New York~~–~~,
~~July 31, 2025~~ ~~CONSUMER ATTORNEYS, PLLC~~

November 9, 2026 Respectfully submitted,

**SAGE LEGAL LLC**

By~~:/~~: */s/ Emanuel Kataev*

Emanuel Kataev, Esq.

~~6829 Main Street~~

~~Flushing~~
18211 Jamaica Avenue
Jamaica, NY ~~11367-1305~~ 11423-2327
(718) 412-2421 (office)

(718) 489-4155 (facsimile)
~~ekataev@consumerattorneys.com~~

(917) 807-7819 (cellular)
emanuel@sagelegal.nyc

*Attorneys for Plaintiffs*
*Teresa Goncalves,~~,~~ and*
*Dina Ketcham~~, and~~*
~~*all others similarly situated*~~