**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TERESA GONCALVES and DINA KETCHAM, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br>*vs.*<br><br>KRISTIN SHEELER DESIGNS, LLC, KRISTIN SHEELER, and JAMES "JIM" BRINNEN,<br><br>Defendants. | No. 2:25-cv-04264-GRB-ST<br><br>**DEFENDANTS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED MATERIAL FACTS** |
| KRISTIN SHEELER DESIGNS, LLC,<br><br>Counterclaim-Plaintiff,<br>vs.<br><br>TERESA GONCALVES and DINA KETCHAM,<br><br>Counterclaim-Defendants. | |

Pursuant to Local Rule 56.1 of the U.S. District Court for the Eastern District of New York, Defendants, Kristin Sheeler Designs, LLC, LLC ("KSD"), Kristin Sheeler ("Sheeler"), and James Brinnen ("Brinnen") (collectively, "Defendants") submit the following statement of undisputed facts.

## I. SUMMARY

1. Plaintiffs Teresa Goncalves ("Goncalves") and Dina Ketcham ("Ketcham") (together, "Plaintiffs") originally filed this lawsuit on July 31, 2025. Dkt. 1.

2. The Complaint is styled as a collective action under the Fair Labor Standards Act, 29 U.S.C. §201 *et. seq.* ("FLSA") and a class action under the New York Labor Law ("NYLL").

Dkt. 1 at ¶¶52-98. However, Plaintiffs never moved for collective or class certification, and the deadline to join new parties or amend pleadings has passed. Dkt. 17. Accordingly, the action is solely on behalf of the two plaintiffs, Goncalves and Ketcham.

3. Plaintiffs make five claims: (1) FLSA violations for unpaid wages and overtime pay (Dkt. 1 at ¶¶99-105); (2) violations of the NYLL for failing to pay overtime (Dkt. 1 at ¶¶106-114); (3) violations of the NYLL for failure to pay wages (Dkt. 1 at ¶¶115-122); (4) violations of the NYLL regarding notice of pay rate for which Plaintiffs seek statutory damages (Dkt. 1 at ¶¶123-130); and (5) violations of the NYLL for inaccurate wage statements for which Plaintiffs seek statutory damages (Dkt. 1 at ¶¶131-138).

4. On June 30, 2026, the Court heard Defendants' motion to dismiss, as made via pre-motion letter. Dkt. 25. After a hearing, the court dismissed that portion of Claim 1 – the FLSA claim – relating to Plaintiffs' claims that they were paid under minimum wage in any given week. Dkt. 25 at 25:15-18 (citing Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 201 (2d Cir. 2013)). The other claims were allowed to proceed. Dkt. 25.

5. Defendants filed their answer on July 14, 2026. Dkt. 24. Defendants denied the relevant remaining claims. Dkt. 24.

6. As shown below, Plaintiffs are unable to show sufficient evidence to raise a genuine issue of fact on any of the five claims, and the evidence uniformly demonstrates that the claims should be dismissed on summary judgment.

## II. Claims 1, 2, and 3: Violations of the FLSA and NYLL for Unpaid Wages and Overtime

7. In Claim 1, Plaintiffs claim that Defendants "knowingly and willfully" failed to pay Plaintiffs their wages and overtime compensation for the actual hours worked. Dkt. 1 at ¶100.

8. In Claim 2, Plaintiffs claim that Defendants violated the NYLL by failing to pay one and one-half times Plaintiffs' rate of pay for overtime. Dkt. 1 at ¶111.

9. In Claim 3, Plaintiffs claim that Defendants violated the NYLL by failing to pay Plaintiffs at their regular established rates of pay.

10. As noted above in Paragraph 4, the Court has dismissed the portion of claim 1 for unpaid minimum wages, and has allowed only the claim for overtime compensation.

11. The person at Defendant KSD responsible for paying employees was Defendant Brinnen. Declaration of James Brinnen ("Brinnen Dec.") ¶2; Declaration of David K. Bowles ("Bowles Dec."), Ex. Q at 53:11-19.

12. KSD uses a point of sale ("POS") system called Lightspeed Commerce Inc. ("Lightspeed") to track employee hours worked. Brinnen Dec. ¶3; Bowles Dec., Ex. Q at 33:4-8.

13. Using the Lightspeed system, KSD employees regularly clock in and clock out when they start and finish work. Brinnen Dec. ¶4.

14. The Lightspeed then generates a weekly report, which Brinnen reviews and uses to calculate each employee's weekly pay. Brinnen Dec. ¶5.

15. Brinnen does not modify the numbers Lightspeed generates per employee, except in the instances where the Lightspeed report reflects unusual time entries, such as where the employee has obviously clocked in or clocked out incorrectly, including by failing to clock out of the system, resulting in an obviously incorrect time entry, such as in excess of ten hours, or where the portion of the report applicable to an employee who regularly works five days per week reflects a lower amount of time than expected. Brinnen Dec. ¶6.

16. In the event of an unusual time entry, Brinnen would first check against KSD's scheduling tool to see if it shows an exception to the normal scheduling practice. If no exception

is shown hewould conform the time entry to the schedule and send a message to the employee with the unusual time entry to give them the opportunity to respond with additional comments or corrections. Brinnen Dec. ¶7.

17. As per KSD's policy, Brinnen also routinely removes one half-hour for a lunch break, unless that employee informs him that they worked during that lunch break. Brinnen Dec. ¶8.

18. Should an employee fail to clock in, they could contact Brinnin with hours worked but not clocked in. Bowles Dec., Ex. R at 138:12-16.

19. KSD's stated policy is that employees should not be scheduled for overtime without prior approval and should not work unauthorized overtime unless unavoidable. However, when a KSD employee does work overtime hours, Brinnen calculates their extra pay for overtime at time and a half rates, and adds that amount to the straight time pay. Brinnen ¶9, Ex. P; Declaration of Kristin Sheeler ("Sheeler Dec.") ¶¶8, 13.

20. Each week, Brinnen sends a summary email to each employee showing the hours worked, along with other information. He did so during all times during which both Plaintiffs were employed. The statements accurately stated the wages, commissions (if any), and hours to the best of Brinnen's knowledge and ability. Brinnen Dec. ¶10.

21. In the event an employee forgets to log hours into the Lightspeed system, or performs work and is unable to log those hours for some reason, that employee may email Brinnen to add the hours to the payroll. Such communication is expected from each employee and has been communicated as a responsibility for each employee if they miss logging time in Lightspeed. Brinnen Dec. ¶11.

***Payments to Goncalves***

22. KSD hired Goncalves on or about May 31, 2021. At that time Brinnen sent a new hire packet to Goncalves, setting her wages at $23 per hour plus commissions. Brinnen Dec. ¶12, Ex. A. At all times KSD paid Goncalves at her established rate of pay. Brinnen Dec. ¶12.

23. Defendants have produced a spreadsheet showing the raw hours worked by Goncalves. Brinnen Dec. ¶¶13-14, Ex. B.

24. Defendants have produced a spreadsheet applying Goncalves' hourly pay to her hours worked, removing half an hour daily of work to account for a lunch break, calculating her daily gross pay, showing any withholdings, and calculating her weekly pay, including any overtime. Brinnen Dec. ¶15, Ex. C.

25. During the relevant time period, KSD used JPMorgan Chase Bank, N.A. ("Chase Bank") for purposes of paying employees. Brinnen Dec. ¶16.

26. Defendants have accessed Chase Bank's website and caused it to generate reports of payments to Goncalves during her term of employment with KSD. Brinnen Dec. ¶¶17, Exs. D-F.

27. Defendants paid all amounts calculated to be owed to Goncalves during the course of her employment. Brinnen Dec. ¶18.

28. For each week of pay, Brinnen sent Goncalves a weekly wage statement, as he did with all employees. Brinnen Dec. ¶¶10, 19, Ex. G. The wage statements were accurate. Brinnen Dec. ¶10. Goncalves had the ability to write Brinnen back and ask that any errors be corrected. Brinnen Dec. ¶10-11, 19; Bowles Dec., Ex. S at 182:2-15 ("Anybody has an opportunity").

29. During her deposition, Goncalves was unable to identify any instance in which she recorded hours for KSD and was unpaid. Bowles Dec., Ex. R at 69:15-18; 179:8-17.

30. Goncalves further testified that she had no specific recollection or documentation of any instances of her working hours and being unpaid for those hours. Bowles Dec., Ex. R at 139:15-23; 140:2-5.

31. When asked whether she was paid for all hours she reported working to KSD, Goncalves admitted that she believed she been paid for all such hours. Bowles Dec., Ex. R at 179:16-17.

32. When asked for any record of Goncalves not being paid for overtime, she testified that she had no records. Bowles Dec., Ex. R at 17:7-18.

33. Goncalves did not request overtime for KSD. Sheeler Dec. ¶10.

34. Goncalves terminated her employment with KSD in April of 2023. Bowles Dec., Ex. R at 26:10-13.

***Payments to Ketcham***

35. KSD hired Ketcham in September 2022. Brinnen Dec. ¶20; Bowles Dec., Ex. S at 43:5-14. At that time Brinnen sent a new hire packet to Ketcham, setting her wages at $20 per hour. Brinnen Dec. ¶20, Ex. H. At all times KSD paid Ketcham at her established rate of pay. Brinnen Dec. ¶20.

36. Brinnen has caused Lightspeed to generate a spreadsheet of all hours worked by Ketcham during her employment with KSD. Brinnen Dec. ¶21, Ex. I.

37. Defendants have also generated a spreadsheet applying Ketcham's hourly pay to her hours worked, removing half an hour daily of work to account for a lunch break, calculating her daily gross pay, showing any withholdings, and calculating her weekly pay, including any overtime. Brinnen Dec. ¶22, Ex. J.

38. Ketcham requested and received overtime occasionally in 2023 and 2024, and was paid at a regular rate of pay for the straight hours and time-and-a-half for overtime. Sheeler Dec. ¶¶11-12.

39. Defendants have produced documentation of payments made via KSD's bank, Chase Bank, to Ketcham. Brinnen Dec. ¶23, Exs. K-N.

40. Defendants paid all amounts calculated to be owed to Ketcham during the course of her employment. Brinnen Dec. ¶24; Sheeler Dec. ¶23.

41. During her deposition, Ketcham testified that she was paid for all the time that she was "clocked in" to KSD. Bowles Dec., Ex. S at 23:4-8.

42. Ketcham also testified that she could not recall any specific dates during which she worked overtime and was unpaid. Bowles Dec., Ex. S at 164:2-16; 166:23-167:2.

43. Ketcham also testified that she could not recall ever complaining to KSD's management that she had not received overtime pay. Bowles Dec., Ex. S at 166:3-22.

## III. Claim 4: Notices of Pay Rate Upon Hire

44. Claim 4 is that Defendants failed to provide notices of pay rate upon hire. Dkt. 1 at ¶125.

45. KSD hired Goncalves on or about May 31, 2021. Brinnen Dec. ¶12, Ex. A. At that time Brinnen sent a new hire packet to Goncalves, setting her wages at $23 per hour plus commissions. Brinnen Dec. ¶12, Ex. A.

46. KSD hired Ketcham September 2022. At that time Brinnen sent a new hire packet to Ketcham, setting her wages at $20 per hour. Brinnen Dec. ¶20, Ex. H. The new hire packet made no mention of commissions. Brinnen Dec. ¶20, Ex. H.

## IV. Claim 5: Inaccurate Wage Statements

47. Claim 5 is that Defendants failed to provide accurate wage statements to Plaintiffs. Dkt. 1 at ¶135.

48. KSD provides and at all relevant times provided weekly pay statements to employees. Brinnen Dec. ¶10.

49. KSD provided weekly pay statements to Goncalves during her employment. Brinnen Dec. ¶19, Ex. G.

50. Goncalves had the ability to write Brinnen back and ask that any errors be corrected. Brinnen Dec. ¶¶10-11, 19; Bowles Dec., Ex. S at 182:8-15 ("Anybody has an opportunity.")

51. KSD provided weekly wage statements to Ketcham during her employment. Brinnen Dec. ¶25, Ex. O.

52. Ketcham testified that she received weekly wage statements from Brinnen for KSD. Bowles Dec., Ex. S at 182:2-7; 32:23-33:10.

53. Ketcham further testified that she had an opportunity to respond to the weekly wage statements with any corrections. Bowles Dec., Ex. S at 182:8-15.

54. The weekly wage statements were accurate. Brinnen Dec. ¶¶10, 19, 25.

Dated: Sunday, November 15, 2026

Respectfully submitted,

By: ______________________

David K. Bowles
BOWLES & JOHNSON PLLC
14 Wall Street, 20th Floor
New York, New York 10005
T: 212-390-8842
E: David@BoJo.Law
*Counsel for Defendants*