# Exhibit H

**From:** **Jim Brinnen** jbrinnen@gmail.com
**Subject:** NIBI Pay Summary, Week-Ending Sep 16, 2022
**Date:** September 21, 2022 at 9:48 PM
**To:** dinax3@yahoo.com

JB

Dina – Below are your payroll details for the period that ended Friday, Sep. 16. I realized I don't have your details in order to pay you … I typically pay via Zelle and am hoping you have that set up so I can use it to pay you. Can you confirm that you have Zelle set up and if so, is it associated with your email or phone?

Also, I have attached some paperwork I need you to complete as soon as possible: a work agreement outlining expectations, a compensation agreement, and a tax form. If you could complete those asap and email back I'd really appreciate it. Of course if you have any questions, please let me know.

| | |
|---|---|
| Total Hours: | 28.0 |
| Breaks: | 2.0 |
| Net Hours: | 27.0 |

| Dina Ketcham | | |
|---|---|---|
| Gross Pay | $ | 520.00 |
| Additions | | |
| Comm | $ | - |
| TOT Gr Pay | $ | 520.00 |
| Deductions | | |
| NYS | $ | 18.07 |
| SocSec | $ | 32.24 |
| Medicare | $ | 7.54 |
| Fed W'holding | $ | 49.90 |
| TOT Net Pay | $ | 412.25 |

Thank you
Jim

Kristin Sheeler Designs LLC / NIBI-MTK / NIBI

Compensation Acknowledgement

This acknowledgement ("AGREEMENT"), executed on the 11th *day of September, 2022* outlines the compensation package between ***Dina Ketchum*** ("EMPLOYEE") and Kristin Sheeler Designs LLC DBA NIBI-MTK/NIBI ("EMPLOYER")



EXHIBIT
2

This acknowledgement ("AGREEMENT"), executed on the 11th *day of September, 2022* outlines the compensation package between ***Dina Ketchum*** ("EMPLOYEE") and Kristin Sheeler Designs LLC DBA NIBI-MTK/NIBI ("EMPLOYER").

**1. Compensation**

EMPLOYEE acknowledges he/she will be compensated for all work performed as noted in and governed by the terms outlined in the separately executed General Work Agreement. EMPLOYEE's compensation will be as follows

**Hourly Rate: $20**

**2.**

**Compensation Schedule**

EMPLOYEE can expect to be paid weekly on Mondays for the prior seven (7) day period. Compensation will include base pay calculated on hours worked.

*Note: it is possible the pay period may change as new payroll processing is adopted by EMPLOYER. If such change is made, EMPLOYEE will be given a minimum of two (2) weeks' notice.

**3. Acknowledgement**

By signing below employee agrees to the terms and conditions presented in this agreement.

*EMPLOYEE*

Name Dina Ketchum

Parent/Guardian (if minor) ______________________________

Title Stylist/Retail Sales Associate

Signature ______________________________

Date ______________________________

This agreement ("AGREEMENT"), executed on the 11th *day of September, 2022* outlines the complete agreement between ***Dina Ketchum*** ("EMPLOYEE") and Kristin Sheeler Designs LLC DBA NIBI-MTK/NIBI ("EMPLOYER").

**1. TERM**

The general term of this agreement will extend from the above listed execution date until employment with EMPLOYER is terminated regardless of conditions leading to EMPLOYEE's separation from EMPLOYER or of the originating party as it relates to the termination. Note that some clauses of the AGREEMENT will remain in effect beyond EMPLOYEE's separation from EMPLOYER as noted below.

**2. ROLE**

EMPLOYEE is being hired as a **Retail Sales Associate** for NIBI with responsibilities including but not limited to the following:

- Responsible for assigned Sales targets and Sales growth targets
- Establishing customer database by collecting customer information and developing customer loyalty
- Contribute to clean/tidy Store appearance including selling floor, sales wrap/check-out area inventory storage area and other non-selling areas
- Contribute to visual merchandising and floor set at assigned location(s)
- Participate in inventory management, all aspects including periodic counts, reconciliations, logging new merchandise, etc.
- Participate in stockroom organization and clean-up
- Mentor younger team members

**3. INELLECTUAL PROPERTY AND ENTITLEMENTS**

EMPLOYEE agrees to grant EMPLOYER an exclusive and irrevocable license to any and all copyrighted or like material, Processes, Procedures, Scheduling or other Management Forms that are produced as a result of his/her work for EMPLOYER. License will remain in effect in perpetuity and will apply to EMPLOYER and EMPLOYER'S employees, assignees, heirs, etc. as reasonably required to conduct EMPLOYER's business related to covered services herein.

EMPLOYEE further agrees that a portion of EMPLOYEE's responsibilities, deliverables, or obligations, while working under the terms of this AGREEMENT may include EMPLOYEE's participation in photo shoots, whether formal with a paid photographer, casual with EMPLOYER's in house photographer, or incidental such as for Instagram or other social media venue. Any images containing EMPLOYEE's likeness, regardless of setting, photographic mode, or intended use will be the sole property of EMPLOYER to be used at EMPLOYER's sole discretion. EMPLOYEE waives all rights of ownership, copyright, and licensure and acknowledges that no fees, commissions, licensing or royalties of any type will be granted for use of images EMPLOYEE participated in the creation of. Waiver of rights includes photographic images EMPLOYEE may take as a part of the responsibilities covered under this agreement during the term of this agreement.

**4. SERVICES**

EMPLOYEE will perform all services noted in this agreement and any others outlined in an addendum to this agreement which may be written and attached to this agreement or may be verbal in nature. EMPLOYEE agrees that he/she will perform all agreed tasks, accountabilities, etc. in a professional manner and will deliver the highest quality end product possible.

EMPLOYER reserves the right to review all final delivered work product and will notify EMPLOYEE within five (5) business days of unsatisfactory delivery quality. EMPLOYEE will then have five (5) business days to make all reasonable efforts to address and correct EMPLOYER's comments, concerns, etc. by making required corrections, amendments, etc. or take other corrective actions to satisfy EMPLOYER's concerns.

If corrective actions are unsatisfactory or are not delivered to EMPLOYER within above stipulated timeframe EMPLOYER reserves right to take any and all corrective actions available.

EMPLOYER or EMPLOYER's representative(s) will be available as required throughout the execution of services related to this agreement.

**5. TERMINATION**

This AGREEMENT represents an employment at will agreement whereby EMPLOYEE or EMPLOYER may terminate this employment at any time for any reason including but not limited to EMPLOYEE's failure to satisfactorily perform duties, responsibilities, etc. related to his/her responsibilities and accountabilities covered by this agreement.

Employment at will conditions notwithstanding, EMPLOYEE will make all reasonable efforts to provide EMPLOYER a minimum of two (2) weeks' notice upon decision to terminate employment with EMPLOYER.

Upon termination, EMPLOYEE agrees to return all materials belonging to EMPLOYER within five (5) business days including but not limited to clothes given as a "work uniform," schedules, inventory files, computer hardware or software, store supplies, etc.

**6. RISK OF LOSS**

EMPLOYEE assumes all risk of loss to his/her person and property that may result from executing services related to this agreement. Loss items may include but are not limited to photographic equipment and accessories, computer and related computer applications or accessories, personal items, etc. even if loss might possibly be attributed to negligence on the part of EMPLOYER or any property EMPLOYER/entity, township, etc. where work may be performed related to the services covered by this agreement.

**7. CONFIDENTIALITY, NON-DISCLOSURE**

EMPLOYEE agrees that as a result of executing this agreement he/she will be exposed to information including but not limited to EMPLOYER's line plans, retail merchandise production techniques, suppliers (i.e. labels, brands, etc.), general merchandising program, marketing / public relations activity, retail site sales and revenue targets/sales activity, retail site sales staff compensation, etc. which represents EMPLOYER's intellectual property and is confidential in nature.

EMPLOYEE agrees that "confidential information" is any information, including but not limited to this agreement, other agreements which may be executed, and/or EMPLOYEE's compensation terms which is not and will not become publicly available through common business activity, word of mouth, selling or public relations activities, etc. EMPLOYEE will treat all such information as confidential and will take all necessary and reasonable precautions to protect and keep confidential without disclosing such to any person, entity, etc. not a part of this agreement. All EMPLOYEE's employees and representatives including but not limited to partners, sales representatives, public relations and marketing partners, bloggers or other social media partners or service EMPLOYEEs are included in this

Confidentiality clause, and EMPLOYEE will take all reasonable and necessary steps to ensure such parties do not disclose confidential information to any person, party or entity outside of this agreement.

Any breach of confidential information by EMPLOYEE, its employees or service EMPLOYEEs will be disclosed to EMPLOYER immediately and in writing. EMPLOYEE agrees that it is responsible for any and all damages incurred by EMPLOYER in case of such breach of confidentiality by EMPLOYEE even if such damages are difficult to calculate through specific formulae. EMPLOYEE agrees that EMPLOYER reserves the right to seek damages to the maximum extent allowable in case of such breach of confidentiality by EMPLOYEE or any of its employees, service EMPLOYEEs, assignees, etc.

**8. WHOLE AGREEMENT**

EMPLOYEE agrees this agreement represents the whole agreement between the parties and no partnership expressly stated or implied exists beyond the scope of this agreement.

**9. GOVERNANCE**

EMPLOYEE agrees that this agreement will be executed and governed by the laws of New York State and any and all legal actions that may become necessary as a result of activities or covenants covered within this agreement will be settled in courts within New York State if such action becomes necessary.

**10. SEVERABILITY**

If any clause of this agreement is found to be unenforceable, all other clauses will remain in effect for the term of this agreement. EMPLOYEE further acknowledges that it, its employees, service EMPLOYEEs, assignees, etc. will be bound by the Confidentiality, Non-Disclosure stipulations in perpetuity and that its responsibility to hold EMPLOYER's confidential information in confidence will extend beyond the term of this agreement.

**11. EXECUTION**

By signing below all parties agree to the terms and conditions presented in this agreement.

*For EMPLOYER*

Name KRISTIN SHEELER

Title Owner, Kristin Sheeler Designs LLC / DBA NIBI-MTK®

Signature ______________________________

Date ______________________________

*EMPLOYEE*

Name Dina Ketchum

Parent/Guardian (if minor) ______________________________

Title Stylist/Retail Sales Associate

Signature ______________________________

Date ______________________________